# United States Court of Appeals
## For the First Circuit

No. 14-1546

UNITED STATES OF AMERICA,

Appellee,

v.

RANDOLPH LEO GAMACHE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]
[Hon. Margaret J. Kravchuk, U.S. Magistrate Judge]

Before

Torruella, Selya and Lynch,
Circuit Judges.

Stephen C. Smith, with whom Lipman & Katz was on brief, for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with whom Thomas E. Delahanty II, United States Attorney, was on brief, for appellee.

July 6, 2015

**SELYA**, <u>Circuit Judge</u>. Defendant-appellant Randolph Leo Gamache labors to drape this appeal in a fabric woven out of interesting constitutional questions arising under the Fourth and Fifth Amendments. But federal courts have no roving writ to address legal questions merely because those questions are intriguing. The case before us is susceptible to resolution through the application of two familiar exceptions to the warrant requirement of the Fourth Amendment: the consent doctrine and the plain view doctrine. Following that well-trodden path to its logical conclusion, we affirm the district court's denial of the appellant's motion to suppress.

## I.

### Background

We rehearse the relevant facts as supportably found below and chronicle the travel of the case.[1] On July 30, 2012, two armed police officers (Scott Scripture and Ed Leskey) arrived at the appellant's home in Orono, Maine, to serve a temporary order

---

[1] A magistrate judge made the first appraisal of the appellant's motion to suppress. The district court, on de novo review, later adopted the magistrate judge's findings and recommendation. <u>See</u> <u>United States</u> v. <u>Gamache</u>, No. 13-21, 2013 WL 3324217, at *1 (D. Me. July 1, 2013). For present purposes, we take an institutional view and refer to the determinations below as those of the district court. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Hughes</u>, 640 F.3d 428, 431 n.1 (1st Cir. 2011).

for protection from abuse stemming from an ex parte complaint filed by his former wife.  See Me. Rev. Stat. tit. 19-A, § 4006(2).  The appellant opened his front door and motioned for the officers to enter.  Once inside, Officer Scripture read aloud the material portions of the protection-from-abuse order, including a provision prohibiting the appellant's possession of firearms.  See id. § 4006(2-A).  He then gave the appellant a copy of the order, which contained a note in bold-face type and capital letters warning that any violation of the order was punishable as a crime.  See id. § 4011(1)(A).  A second order, attached to the first, required the appellant to surrender any firearms in his possession immediately upon service.  The appellant signed that order, acknowledging receipt of service.

Officer Scripture proceeded to inquire whether the appellant had any firearms in his apartment.  The appellant pointed to the living room wall, where two shotguns — one of which was an unregistered sawed-off shotgun — were clearly visible and prominently displayed.  The district court credited Officer Scripture's sworn statement that he would have seen the firearms from his vantage point had the appellant not pointed them out. See United States v. Gamache, No. 13-21, 2013 WL 3324217, at *2

- 4 -

(D. Me. July 1, 2013); see also id. at *1 n.1 (overruling objection to this factual finding).

Officer Leskey removed the two shotguns from the wall, and the appellant turned over two other guns. The entire interaction lasted about forty minutes and was "nonconfrontational." Id. at *6. At no point did the officers conduct a search of the apartment.

On two subsequent occasions, detectives went to the appellant's home to question him about the sawed-off shotgun. The appellant made incriminating statements to the detectives, admitting, among other things, that he had used a hacksaw to shorten the barrel of the shotgun and that he knew that it was unlawful for him to trim the barrel to less than 18 inches. These interviews were "conversational" and "relaxed." Id. at *2.

In due season, a federal grand jury charged the appellant with a violation of federal law, to wit, possessing an unregistered shotgun with a barrel measuring less than 18 inches. See 26 U.S.C. § 5861(d); see also id. § 5845(a)(1). The appellant moved to suppress the sawed-off shotgun and his statements about it on Fourth and Fifth Amendment grounds. He maintained that his relinquishment of the sawed-off shotgun was coerced under penalty of state criminal sanctions and that his subsequent admissions

- 5 -

were fruit of the poisonous tree.  See Wong Sun v. United States, 371 U.S. 471, 487-88 (1963).

The district court referred the matter to a magistrate judge who reviewed a paper record, found the facts, and recommended denial of the appellant's motion.  Timely objections were filed.  See Fed. R. Crim. P. 59(b)(2).  On de novo review, the district court adopted the magistrate judge's proposed findings and recommendation, declining to suppress the challenged evidence.  See Gamache, 2013 WL 3324217, at *1.

In short order, the appellant entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), reserving the right to appeal the suppression ruling.  The district court accepted the conditional plea and sentenced the appellant to three years' probation.  This timely appeal followed.

## II.

### Analysis

In reviewing the disposition of a motion to suppress, we accept the district court's findings of fact unless they are clearly erroneous, deferring to reasonable inferences drawn from the discerned facts.  See United States v. Paneto, 661 F.3d 709, 711 (1st Cir. 2011).  The district court's ultimate constitutional

conclusions are subject to de novo review.  See United States v.

Zapata, 18 F.3d 971, 975 (1st Cir. 1994).

The appellant submits that, despite his ready relinquishment of his sawed-off shotgun, his cooperation with the police was actually coerced.  In his view, he was given a Hobson's choice: either comply with the served orders (thereby turning over evidence of a known violation of federal law) or refuse to comply with the orders (thereby risking prosecution under state law).  Caught between Scylla and Charybdis, his thesis runs, he cannot be deemed to have voluntarily consented to the seizure of the shotgun.  Under the circumstances, his surrender of it amounted to compelled self-incrimination in violation of the Fifth Amendment and, thus, the act of relinquishment, to the extent that it demonstrated his possession of the illegal weapon, could not be used against him in a criminal case.  Cf. Fisher v. United States, 425 U.S. 391, 410 (1976) (holding that act of producing evidence may, in some circumstances, trigger Fifth Amendment safeguards).  By the same token, the officers' seizure of the shotgun transgressed the Fourth Amendment.  And, finally, he posits that the inculpatory statements made during the follow-up interviews must be suppressed as byproducts of the antecedent (and unlawful) police conduct.  See Wong Sun, 371 U.S. at 487 (suppressing statements derived from

arrest taken in violation of Fourth Amendment); United States v. Downing, 665 F.2d 404, 409 (1st Cir. 1981) (applying "fruits" doctrine to antecedent Fifth Amendment violation).

The appellant's argument raises a number of potentially interesting legal questions concerning the use of incriminating evidence seized without a warrant but under the auspices of a court order. But we are mindful that "[c]ourts should strive to avoid gratuitous journeys through forbidding constitutional terrain," Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 538 (1st Cir. 1995), and the appellant's intricate web of constitutional claims need not be addressed today. Here, there is a valid and independent legal theory upon which the admission of the sawed-off shotgun against the appellant can be grounded. Accordingly, its exclusion is not required. See Nix v. Williams, 467 U.S. 431, 443 (1984) (explaining that when "challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been absent any error or violation"). To be specific, the officers' consensual entry into the appellant's dwelling did not offend the Fourth Amendment and, once they were lawfully inside, the warrantless seizure of the sawed-off shotgun was lawful under the plain view doctrine. We explain briefly.

The Fourth Amendment does not forbid any and all warrantless incursions on the person and property of an individual. Rather, it forbids only "unreasonable searches and seizures." U.S. Const. amend. IV. Although a warrantless entry into an individual's residence is presumptively unreasonable, a valid consent to the entry by a person with apparent authority vitiates any Fourth Amendment concern. See Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Whether consent was voluntarily given is a factbound inquiry, the answer to which is normally reviewable for clear error. See United States v. Laine, 270 F.3d 71, 74 (1st Cir. 2001).

The court below found that "[t]he officers were admitted to the residence with [the appellant's] voluntary consent." Gamache, 2013 WL 3324217, at *4. The appellant does not seriously contest this finding. Nor could he: he has admitted that upon the officers' arrival, he opened his front door and affirmatively signaled for the officers to enter. Two other considerations cinch the matter: the record is barren of any evidence that might support an inference that this gesture was induced through force, pressure, or deception; and the consensual entry took place before the state-court orders were served. Viewed against this backdrop, the district court's finding of voluntary consent to the officers'

entry into the apartment is not clearly erroneous. See Robbins v. MacKenzie, 364 F.2d 45, 49 (1st Cir. 1966) ("An ordinary person who knocks on a door and receives assent may properly consider himself an invited guest, and would be so considered by the courts . . . .").

Still, consent to enter a home does not, by itself, give law enforcement officers carte blanche to rummage through the premises and perform a general search. After all, a warrantless search may not exceed the scope of the consent obtained. See United States v. Marshall, 348 F.3d 281, 286 (1st Cir. 2003). Here, however, once the officers were lawfully present in the appellant's apartment, another exception to the Fourth Amendment's warrant requirement came into play.

We refer, of course, to the plain view doctrine. "The theory of [the plain view] doctrine consists of extending to nonpublic places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband." Arizona v. Hicks, 480 U.S. 321, 326-27 (1987) (citing Payton v. New York, 445 U.S. 573, 586-87 (1980)). As we have explained, the plain view doctrine permits the warrantless seizure of an item if the officer

- 10 -

is lawfully present in a position from which the item is clearly visible, there is probable cause to seize the item, and the officer has a lawful right of access to the item itself.  See United States v. Sanchez, 612 F.3d 1, 4-5 (1st Cir. 2010); United States v. Jones, 187 F.3d 210, 219-221 (1st Cir. 1999).

The court below determined that the circumstances presented here satisfied these three requirements.  We review a district court's determination as to the applicability vel non of the plain view doctrine only for clear error.  See United States v. Rutkowski, 877 F.2d 139, 141 (1st Cir. 1989).  In this instance, the district court's conclusion is not clearly erroneous.[2]  We need not tarry over the first element of the plain view framework: the officers were lawfully present in the appellant's abode pursuant to his voluntary consent, and the sawed-off shotgun was openly displayed on an interior wall in plain view.

In a feeble effort to contest this element, the appellant notes that the officers did not actually see the sawed-off shotgun until after the appellant pointed it out.  That is true as far as

_____

[2] The government contends that the appellant waived any objection to the district court's application of the plain view doctrine by failing adequately to address the issue in his opening brief.  Because the government prevails on the merits of the plain view inquiry, we see no need to pursue the question of waiver.

it goes — but it does not take the appellant anywhere near his desired destination. The Fourth Amendment is concerned only with infringements upon reasonable expectations of privacy, and "persons cannot reasonably maintain an expectation of privacy in that which they display openly." Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174, 181 (1st Cir. 1997). It follows, we think, that an individual cannot frustrate the application of the plain view doctrine by the simple expedient of pointing out openly visible contraband before the police have a chance to note the presence of the contraband. Cf. United States v. Sparks, 291 F.3d 683, 691 (10th Cir. 2002) ("[B]ecause [the defendant] left the driver's side door of his truck open, he had no legitimate expectation of privacy shielding that portion of the interior of his truck which could have been viewed from outside the vehicle by either inquisitive passersby or diligent police officers." (internal quotation marks omitted)). What controls here is the undisputed fact that the sawed-off shotgun was clearly visible from the officers' lawful vantage point.

The probable cause element presents something of a wrinkle — but a wrinkle that can easily be ironed out. The officers did not immediately recognize that one of the displayed shotguns had a barrel measuring less than 18 inches in length. Thus,

probable cause to seize the sawed-off shotgun had to stem from the prohibition on the appellant's continued possession of it — a prohibition memorialized in the state-court orders.

Noting that the appellant never resisted compliance with the orders, the district court found probable cause by resorting to a hypothetical. See Gamache, 2013 WL 3324217, at *4. Had the appellant refused to relinquish the firearms, the court reasoned, the officers would have had probable cause to believe that a crime under state law was being committed and that the shotguns were evidence of that crime. See id.

We believe that this approach unnecessarily complicates the matter. Under the express language of the orders, the appellant lost his right to possess any firearms the moment that he was properly served. Even if the appellant might avoid a conviction for violating the orders at that time, cf. United States v. Baird, 721 F.3d 623, 631 (1st Cir. 2013) (requiring an "innocent possession" instruction "where the elements of a crime are technically satisfied for a brief interlude and yet where the circumstances are such that conviction would be unjust"), his possession of the firearms after service, however brief, violated the orders and, thus, constituted a crime under Maine law, see United States v. Teemer, 394 F.3d 59, 63 (1st Cir. 2005) ("[T]he

briefest moment of possession may be enough for a conviction."). Translated into the idiom of the plain view doctrine, this means that the officers had probable cause to seize the sawed-off shotgun (and any other openly visible firearms, for that matter) as evidence of that crime.

We are left with only the third element of the plain view framework. With respect to that element, the district court found that once the officers were inside the apartment, the served state-court orders gave them lawful access to the clearly visible shotguns. See Gamache, 2013 WL 3324217, at *4. The appellant has not challenged this factual finding on appeal and, therefore, we accept it without further elaboration.

As a final matter, we return to the appellant's argument that his subsequent admissions should have been suppressed as fruit of the poisonous tree. Because there was no antecedent constitutional violation (and, thus, no poisonous tree), this argument necessarily fails.

### III.

### Conclusion

We need go no further. The officers were lawfully in the appellant's home by virtue of his voluntary consent; and once they had served the orders there, they were entitled to seize

- 14 -

firearms that were in plain sight (such as the sawed-off shotgun). Consequently, the district court did not err in denying the appellant's motion to suppress.

**Affirmed.**