# United States Court of Appeals
## For the First Circuit

No. 15-2412

UNITED STATES OF AMERICA,

Appellee,

v.

OSCAR NUÑEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Hunter J. Tzovarras on brief for appellant.
Thomas E. Delahanty II, United States Attorney, and Margaret
D. McGaughey, Assistant United States Attorney, on brief for
appellee.

March 29, 2017

**SELYA**, <u>**Circuit Judge**</u>.  The sentencing court — ruling on the basis of circumstantial evidence — attributed constructive possession of six Molotov cocktails to defendant-appellant Oscar Nuñez.  That finding fueled a substantial increase in the appellant's guideline sentencing range (GSR) and contributed materially to his 82-month sentence.  The appellant now argues that the constructive possession finding was woven entirely out of wispy strands of speculation and surmise and that, as a result, his sentence should be vacated.

We agree with the appellant that the government offered no direct evidence that he possessed the Molotov cocktails. Circumstantial evidence, though, can be highly persuasive.  Given the quality and quantity of the circumstantial evidence here, we conclude that the sentencing court's constructive possession finding was not clearly erroneous.  Consequently, we affirm the appellant's sentence.

Because this appeal trails in the wake of the appellant's guilty plea, we draw the facts from the plea colloquy, the uncontested portions of the presentence investigation report, and the sentencing transcript.  <u>See</u> <u>United States</u> v. <u>Dávila-González</u>, 595 F.3d 42, 45 (1st Cir. 2010); <u>United States</u> v. <u>Dietz</u>, 950 F.2d 50, 51 (1st Cir. 1991).  The appellant trafficked in drugs in and around Bangor, Maine.  In the course of that nefarious enterprise, he briefly employed David Ireland as his driver.  After Ireland

left the appellant's employ, the two men had a falling-out, one manifestation of which was that, in June of 2012, the appellant visited Ireland at his home and threatened him with a handgun.

The acrimony between Ireland and the appellant did not stop there. Around 2:00 a.m. on July 22, 2012, two men (one of whom was later identified as the appellant) went to Ireland's house, saturated the base of the building with gasoline poured from red plastic gasoline cans, and ignited the fuel. This ring of fire, far from a symbol of love, compare Johnny Cash, "Ring of Fire," on Ring of Fire (Columbia Records 1963) ("Love is a burning thing / And it makes a fiery ring"), with Dante Alighieri, The Inferno canto XII (describing those guilty of violence against their neighbors as trapped in a ring made up of a river of boiling blood), burned the home's exterior. To make a bad situation worse, one of the marauders shot eight rounds in the direction of the home.

Early the next day, law enforcement officers executed a search warrant at the appellant's residence (into which he and his girlfriend had moved less than a week before). Hidden in the eaves, the police discovered a Hi-Point .380 caliber pistol, which matched both the handgun that the appellant had brandished while threatening Ireland in June and the bullets that had been fired at Ireland's house the previous morning. Beneath the deck of the appellant's dwelling, the officers found two red plastic gasoline

- 3 -

cans nestled snugly between the foundation and a six-pack of beer bottles that had been repurposed into Molotov cocktails.

The appellant admitted to setting the fire at Ireland's house and pleaded guilty in state court to charges of arson and criminal threatening. He was charged federally with a single count of being a felon in possession of a firearm. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). Following his guilty plea to an information setting forth that charge, the district court sentenced him to an 82-month term of immurement.[1] This timely appeal ensued.

Our review of a criminal sentence typically engenders a two-step process. See United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). First, we resolve any claims of procedural error, including any claims that implicate the accuracy of the sentencing court's calibration of the GSR. See Martin, 520 F.3d at 92. Second, we consider any attack on the substantive reasonableness of the sentence. See id. Here, our task is simplified because the appellant has challenged only the procedural integrity of his sentence.

In this case — as in virtually every case — the plinth on which the district court's sentencing calculus rests is its

_____

[1] At the time of his federal sentencing, the appellant had not yet been sentenced on the related state charges.

- 4 -

calculation of the applicable guideline range. To this end, the court made a series of determinations that yielded a GSR of 120-150 months. That range, which was capped at 120 months by virtue of the maximum sentence allowed under the statute of conviction, see 18 U.S.C. § 924(a)(2), hinged in substantial part on a factual finding that the appellant possessed the six Molotov cocktails discovered in the search. For sentencing purposes, each Molotov cocktail was considered both a firearm and a destructive device. See id. § 921(a); 26 U.S.C. § 5845; see also USSG §2K2.1, cmt. n.1. Consequently, this finding increased the GSR (and, thus, adversely affected the appellant's sentence) in three ways: it boosted his base offense level, see USSG §2K2.1(a)(3); it triggered a two-level enhancement for possessing three or more firearms, see id. §2K2.1(b)(1)(A); and it brought into play an additional two-level "destructive device" enhancement, see id. §2K2.1(b)(3)(B).

The constructive possession finding is the focal point of the appeal in this case. In reviewing it, we start with the accepted premise that, at sentencing, the government bears the burden of proving sentence-enhancing factors by a preponderance of the evidence. See United States v. Paneto, 661 F.3d 709, 715 (1st Cir. 2011). Where, as here, a claim of error addressed to the sentencing court's factfinding was preserved below, appellate review is for clear error. See United States v. Leahy, 668 F.3d 18, 21 (1st Cir. 2012). Clear-error review is demanding: this

- 5 -

standard will be satisfied only if, "upon whole-record-review, an inquiring court 'form[s] a strong, unyielding belief that a mistake has been made.'" United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) (alteration in original) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).

The appellant chafes at this reasoning. He insists that the raw facts are uncontested and that, therefore, a de novo standard of review should apply. But a sentencing court's findings based on inferences from an undisputed set of facts are nonetheless subject to clear-error review. See United States v. Al-Rikabi, 606 F.3d 11, 14 (1st Cir. 2010); United States v. Santos, 357 F.3d 136, 142 (1st Cir. 2004); United States v. McDonald, 121 F.3d 7, 9-10 (1st Cir. 1997). This is such a case.[2]

Against this backdrop, we turn to the challenged finding.[3] It is common ground that possession can be either actual or constructive. See United States v. Maldonado-García, 446 F.3d 227, 231 (1st Cir. 2006). Actual possession means that a person

---

[2] We hasten to add that the standard of review is not determinative here. Even under de novo review, the district court's constructive possession finding would be unimpugnable.

[3] The fact that the district court imposed a downwardly variant sentence does not moot the appellant's claim of error. See Molina-Martinez v. United States, 136 S. Ct. 1338, 1346 (2016) ("In most cases a defendant who has shown that the district court mistakenly deemed applicable an incorrect, higher Guidelines range has demonstrated a reasonable probability of a different outcome.").

has "immediate, hands-on physical possession" of the items in question. United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006) (quoting United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994)). The government does not claim that the appellant actually possessed the Molotov cocktails. Thus, the issue before us reduces to whether — as the district court concluded — the evidence supports a finding that the appellant constructively possessed them.

Constructive possession is present "when a person knowingly has the power at a particular time to exercise dominion and control over" an object. Maldonado-García, 446 F.3d at 231. Dominion and control over an object frequently may be found through inference, based on a showing of dominion and control over the area in which the object is found. See United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993). Moreover, constructive possession may be found based wholly on circumstantial evidence. See United States v. Ridolfi, 768 F.3d 57, 62 (1st Cir. 2014).

In this instance, several pieces of circumstantial evidence point convincingly to the appellant's constructive possession of the Molotov cocktails. To begin, the sentencing court had ample reason to believe that the appellant had dominion and control over his own home, and the Molotov cocktails were found underneath the deck of the home. Absent some countervailing considerations — and the record reveals none — a person who

exercises dominion and control over his own abode is deemed to possess the objects found therein. See McDonald, 121 F.3d at 10. So, for example, "[t]he location of . . . firearms in a defendant's home . . . is a common basis for attributing possession to the defendant." Zavala Maldonado, 23 F.3d at 7.

The appellant rejoins that the Molotov cocktails were not found within the house itself but, rather, under an outside deck that was accessible to others. That is true as far as it goes, but it does not take the appellant very far. Even though the inference of constructive possession would be stronger had the Molotov cocktails been stored within the interior of the house, see, e.g., McDonald, 121 F.3d at 10, that spatial arrangement is hardly a sine qua non for a finding of constructive possession. While the area under a deck or porch may be less secure than the interior of a dwelling, that distinction does not transform the area into public space. Cf. Florida v. Jardines, 133 S. Ct. 1409, 1415 (2013) ("The front porch is the classic exemplar of an area adjacent to the home and 'to which the activity of home life extends.'" (quoting Oliver v. United States, 466 U.S. 170, 182 n.12 (1984))). At the very least, the appellant had especially easy access to the area under the deck — and when contraband is located "in a domain specially accessible to the defendant," a factfinder may reasonably infer that the defendant possessed that

contraband.  Zavala Maldonado, 23 F.3d at 7; see United States v. Vargas, 945 F.2d 426, 429 (1st Cir. 1991).

The particular placement of the Molotov cocktails buttresses the district court's finding of constructive possession.  The plastic gasoline cans that the appellant used in an arson the previous day were fitted tightly between the house and the Molotov cocktails.  The close proximity of the Molotov cocktails to the tools of the appellant's recent crime supports a commonsense inference that the appellant knew of their existence. Such inferences are important because "[w]hen judges sit as factfinders, they are not obliged to put their common sense into cold storage."  United States v. Dunston, ___ F.3d ___, ___ (1st Cir. 2017) [No. 15-1812, slip op. at 13.]

The appellant's protest that his companion in the arson could have hidden the Molotov cocktails does not help his cause. When two malefactors are working closely together in the same criminal activity, a court may infer that each knows of the other's actions.  See Ridolfi, 768 F.3d at 62; United States v. Marek, 548 F.3d 147, 153 (1st Cir. 2008); United States v. Spinney, 65 F.3d 231, 237 (1st Cir. 1995).  One would have to believe in the Tooth Fairy to think that, in the hours following the setting of the blaze, the appellant's accomplice hid the instruments of their offense under the appellant's deck alongside six Molotov cocktails without the appellant's knowledge.  Regardless of who actually put

the items under the deck, the inference of the appellant's knowledge is strong; and the combination of knowledge and access bolsters the district court's finding that the appellant constructively possessed the Molotov cocktails. See Maldonado-García, 446 F.3d at 231.

To sum up, a sentencing court may base its findings entirely on circumstantial evidence provided that its inferences from that evidence. Moreover, the inferences that it draws from that evidence need not be compelled but, rather, need only be plausible. See United States v. Marceau, 554 F.3d 24, 32 (1st Cir. 2009). Here, the evidence of constructive possession, though circumstantial, is convincing, and the district court's inferences from that evidence are eminently plausible. See United States v. Ortiz, 966 F.2d 707, 712 (1st Cir. 1992) ("[F]actfinders may draw reasonable inferences from the evidence based on shared perceptions and understandings of the habits, practices, and inclinations of human beings."). Given this mis-en-scène, we cannot say that the sentencing court clearly erred in finding that the appellant constructively possessed the six Molotov cocktails. See United States v. Ruiz, 905 F.2d 499, 508 (1st Cir. 1990) (explaining that "where there is more than one plausible view of the circumstances, the sentencing court's choice among supportable alternatives cannot be clearly erroneous").

We need go no further. For the reasons elucidated above, the appellant's sentence is

**<u>Affirmed</u>.**