# United States Court of Appeals
## For the First Circuit

No. 15-2367

UNITED STATES OF AMERICA,

Appellee,

v.

YGOA ALMONTE-BÁEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Selya and Lynch,
Circuit Judges.

J. Thomas Kerner for appellant.
David J. D'Addio, Assistant United States Attorney, with whom
William D. Weinreb, Acting United States Attorney, was on brief,
for appellee.

May 12, 2017

**SELYA**, **Circuit Judge**.  Success sometimes depends on taking full advantage of fortuitous occurrences.  In this case, the federal Drug Enforcement Administration (DEA), while engaged in an investigation of a suspected drug-trafficking operation, stumbled across a second (more substantial) drug-trafficking operation.  Much of the evidence concerning this second operation was unearthed following a warrantless entry by DEA agents into an apartment that, as matters turned out, served as a stash house for the second drug-trafficking operation.  In the ensuing prosecution of a participant in the second drug-trafficking operation, the district court found that probable cause, combined with exigent circumstances, justified the warrantless entry.  At trial, the jury convicted.

Focusing with laser-like intensity on the warrantless entry and its aftermath, the appellant now presses this single-issue appeal.  He argues that the district court erred in its determination that the warrantless entry was lawful and, therefore, in denying his motion to suppress a trove of incriminating evidence.  After careful consideration, we uphold the denial of the appellant's motion to suppress and affirm the judgment below.

## I. BACKGROUND

When reviewing the denial of a motion to suppress, we take the facts as the trial court found them, consistent with

record support, see United States v. Romain, 393 F.3d 63, 66 (1st Cir. 2004), adding uncontradicted facts where appropriate.  In the summer of 2013, DEA agents, working with state and local police officers, were investigating a drug-trafficking ring based in Lawrence, Massachusetts.  During the course of this investigation, the agents intercepted telephone calls between two persons (the targets) thought to be part of the ring.  Through these intercepted calls, the agents learned that the targets were planning to rob a quondam associate, one José Medina-López (Medina), whom the targets had reason to believe was receiving bulk drug shipments on a weekly basis.[1]

The targets hatched a plot that contemplated attaching a GPS unit to Medina's car in the hope that it would lead them to his cache of drugs and cash.  The agents decided that it was time for them to act.  They began by canvassing the streets in search of Medina's car.  On the morning of July 26, 2013, they hit the jackpot: they observed Medina leaving a multi-family residential building on Cedar Street, carrying a large trash bag that was so heavy that he needed both hands to lift it.  He hoisted the trash bag into his car and drove away.

---

[1] At the time of the intercepts, Medina was a known quantity to the agents: in March of 2013, he had participated in a controlled purchase of heroin (while he was acting as a courier for one of the targets).  Some years before, he had been convicted on a state drug charge and had served a lengthy prison sentence.

The agents followed Medina and — with the aid of state and local police — pulled him over after they had observed him committing traffic infractions. When the agents reached his car window, Medina was trembling and appeared to be very nervous. The agents questioned him about where he had come from and where he was heading, and Medina provided answers the agents knew to be false.

At that point, the agents asked Medina for permission to search his car. Medina acquiesced. Preliminary to the search, Medina got out of the car and, as he disembarked, the agents spotted a large wad of cash sticking out of his pants pocket. They seized the cash and arrested Medina for his participation in the March heroin transaction.

The agents then proceeded to search the car. In the trash bag that Medina had lugged from the building on Cedar Street, they found more than $370,000 in cash. They discovered more cash within the car, stashed in a box and various bags. When questioned, Medina offered no credible explanation for the oceans of cash (all of which the agents seized).

Spurred on by what they had discovered, the agents returned to the building on Cedar Street. Once there, they encountered the landlord, who confirmed that Medina rented the second-floor apartment. At that juncture, the agents could have stopped their ongoing investigation and sought a search warrant

for the apartment.  Instead, they went to that apartment and knocked on the front door.  A voice from within the apartment responded, "Hello, who is it?"  The agents announced their presence and immediately heard the sound of someone inside running away, that is, toward the back of the apartment.  The front door was sealed over, so the agents moved to a side door.  Concerned that the occupant was either trying to escape or destroy evidence, the agents broke down the side door and forcibly entered the premises. Once inside, they saw a man, later identified as defendant-appellant Ygoa Almonte-Báez, trying to remove a barricade and escape through the back door.[2]  They immediately took the appellant into custody.

A protective sweep of the apartment followed.  See United States v. Martins, 413 F.3d 139, 149-50 (1st Cir. 2005) (discussing nature and scope of permissible protective sweep).  During that sweep, the agents observed in plain view heroin and paraphernalia associated with the heroin trade, including scales and packaging materials.  They also observed notes and records pertaining to heroin sales.

---

[2] At trial, the government introduced evidence indicating that the appellant was the manager of a multi-million-dollar bulk heroin distribution operation, which had its regional headquarters at the Cedar Street apartment.  He had enlisted Medina (who was primarily responsible for collecting money from wholesale customers) as one of his underlings.

Relying partly on what they had seen in plain view, the agents obtained a search warrant later the same day. Returning to the apartment, they seized about 20 kilograms of heroin and an assortment of drug-processing tools.

In March of 2014, a federal grand jury charged the appellant with conspiring to possess with intent to distribute and to distribute one kilogram or more of heroin. See 21 U.S.C. § 841(a)(1), (b)(1)(A)(i); 21 U.S.C. § 846. During pretrial proceedings, the appellant moved to suppress the evidence gathered from the Cedar Street apartment. He maintained that, because the agents' initial entry into the apartment was unlawful, both the protective sweep and the subsequently issued search warrant (which relied in material part on information gleaned during the initial entry) were invalid and any evidence seized as a result was inadmissible as the fruit of a poisonous tree. See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963). The government opposed the motion, and the parties filed affidavits, documentary exhibits, and memoranda in support of their respective positions.

After reviewing the parties' submissions and hearing arguments of counsel, the district court concluded that, before undertaking the warrantless entry, the agents had probable cause to believe that the apartment contained evidence of drug-trafficking activity and that exigent circumstances justified their warrantless entry. See United States v. Almonte-Báez, No.

- 6 -

14-10089, 2014 WL 6751207, at *1 (D. Mass. Dec. 1, 2014). Accordingly, the court upheld the legality of both the initial entry and the warrant-backed search, and it denied the motion to suppress. See id. at *1-2.

A jury later convicted the appellant of the charged crimes. This timely appeal ensued. In it, the appellant neither alleges trial error nor challenges his 156-month sentence. Instead, he trains his fire on only a single claim of error: the district court's refusal to grant his motion to suppress.

## II. ANALYSIS

We review the district court's findings of fact for clear error and afford de novo review to its ultimate conclusions regarding the existence of both probable cause and exigent circumstances. See Ornelas v. United States, 517 U.S. 690, 699 (1996); Romain, 393 F.3d at 68. Our analysis begins with bedrock: the Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. Under this standard, warrantless searches of private premises are presumptively unreasonable. See Brigham City v. Stuart, 547 U.S. 398, 403 (2006). To secure the admission of evidence obtained without a warrant, the government must show that the warrantless search fell within one of a handful of narrowly defined exceptions. See Romain, 393 F.3d at 68.

One such exception to the Fourth Amendment's Warrant Clause is for exigent circumstances. See Kentucky v. King, 563 U.S. 452, 459-60 (2011); United States v. Curzi, 867 F.2d 36, 41 (1st Cir. 1989). That exception generally requires a threshold showing that law enforcement officers had probable cause to enter the premises. See United States v. Capelton, 350 F.3d 231, 240 (1st Cir. 2003). Pertinently, probable cause exists when the totality of the circumstances create "a fair probability that contraband or evidence of a crime will be found in a particular place."[3] United States v. Tanguay, 787 F.3d 44, 50 (1st Cir. 2015) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Probable cause is a necessary, but not a sufficient, precondition for invoking the exigent circumstances doctrine. See Capelton, 350 F.3d at 240. Even when armed with probable cause, the government still must show that an exigency existed sufficient to justify the warrantless entry. See id. Exigent circumstances are present when "there is such a compelling necessity for immediate action as will not brook the delay of obtaining a warrant." Matalon v. Hynnes, 806 F.3d 627, 636 (1st Cir. 2015) (quoting Fletcher v. Town of Clinton, 196 F.3d 41, 49 (1st Cir. 1999)).

---

[3] We say "pertinently" because, in other contexts, the contours of the necessary showing of probable cause may differ. See, e.g., Martins, 413 F.3d at 147 (discussing emergency aid doctrine).

The exigent circumstances doctrine reflects an understanding and appreciation of how events occur in the real world. "[P]olice officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." King, 563 U.S. at 466 (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)). The reasonableness of those judgments is normally the keystone of whether an officer's actions can find shelter under the exigent circumstances doctrine. Consequently, the government ordinarily may invoke the exigent circumstances exception when it can identify an "objectively reasonable basis" for concluding that, absent some immediate action, the loss or destruction of evidence is likely. United States v. Samboy, 433 F.3d 154, 158 (1st Cir. 2005).

Before proceeding further, we digress briefly. The Fourth Amendment's protections extend only to those who have a reasonable expectation of privacy in the entered premises. See Romain, 393 F.3d at 68. Citing this requirement, the government suggests that the appellant lacked a reasonable expectation of privacy in the Cedar Street apartment and, thus, has no standing to challenge the warrantless entry.[4] The district court prudently

_____

[4] In this vein, the parties squabble over whether the apartment was a stash house, used only to store illicit drugs and other contraband, or whether it was a spartanly appointed dwelling where the appellant was an overnight guest. Individuals present at a stash house generally have no reasonable expectation of privacy, see Minnesota v. Carter, 525 U.S. 83, 90-91 (1998), but overnight

- 9 -

eschewed any findings on this issue, instead assuming that the appellant had a reasonable expectation of privacy. See Almonte-Báez, 2014 WL 6751207, at *1. We follow the district court's lead and assume, albeit without deciding, that the appellant had a reasonable expectation of privacy in the apartment.

With this digression put to one side, we return to the question of exigent circumstances. In answering that question, we turn first to the existence vel non of probable cause. That assessment must be made in light of what the agents knew at the time that they effected their warrantless entry. See United States v. Tibolt, 72 F.3d 965, 969 (1st Cir. 1995). In this instance, the agents knew that Medina rented the apartment and, based on the intercepted telephone calls, they reasonably suspected that he received weekly heroin shipments at that address. Just that morning, they had observed Medina carrying a large trash bag, stuffed with several hundred thousand dollars in cash, out of the apartment. In light of Medina's false answers to the agents' queries during the traffic stop and his failure credibly to explain the provenance of the cash, the agents had convincing reasons to believe that the cash had not been obtained legally. To cinch the matter, Medina (a previously convicted drug dealer) was known to be currently involved in the drug trade. The agents knew that he

---

guests in a home generally have such an expectation, see Minnesota v. Olson, 495 U.S. 91, 96-97 (1990).

had been described in the wiretap intercepts as receiving weekly drug shipments. They also knew that he had sold heroin to a cooperating witness a few months earlier.

A finding of probable cause does not require proof of guilt beyond a reasonable doubt. See United States v. Hoffman, 832 F.2d 1299, 1305-06 (1st Cir. 1987). Rather, it requires (as pertinent here) proof adequate to ground an objectively reasonable belief that evidence of a crime is likely to be found in the premises to be entered. See United States v. Floyd, 740 F.3d 22, 32 (1st Cir. 2014). The district court determined that the government's proof rose to this level, see Almonte-Báez, 2014 WL 6751207, at *1, and we agree.

The appellant's rejoinder consists primarily of an attack on the factfinding on which the district court's probable cause determination rests. He contends that the intercepted telephone calls did not reliably indicate that Medina received weekly drug shipments, and that the government did not produce information adequate to show that Medina participated in a controlled drug purchase. But the district court's findings in these respects derive from inferences reasonably drawn from the evidence adduced, and those findings are findings of fact. See United States v. Nuñez, 852 F.3d 141, 144 (1st Cir. 2017). Thus, they are reviewed for clear error. See id.

This deferential standard of review presents an impenetrable barrier for the appellant. Under clear error review, an appellate court must accept the trial court's findings of fact unless, "after assessing the whole of the record," it is "firmly convinced that a mistake has been made." United States v. Dunston, 851 F.3d 91, 101 (1st Cir. 2017). Here, we have formed no such firm conviction and, thus, we detect no clear error: the government filings in the court below included records reflecting that Medina was a known drug dealer and received regular drug shipments. While the appellant makes an attempt to call these records into question, that attempt is entirely unpersuasive.[5] Without more grist for the mill, we cannot disparage the district court's findings of fact as clearly erroneous. See United States v. Gamache, 792 F.3d 194, 198 (1st Cir. 2015).

The appellant also challenges the district court's related finding that the situation the agents encountered at the Cedar Street apartment constituted exigent circumstances. The

---

[5] We note, moreover, that the parties agreed during the suppression hearing that the district court was not obliged to take live testimony unless it deemed such testimony necessary after examining the submitted affidavits and exhibits. The court did not deem such testimony necessary, and the appellant did not object to that determination. "If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal." Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992).

facts, as supportably found by the district court, are straightforward. As soon as the agents knocked on the front door of the apartment and identified themselves, they heard someone inside the apartment running away from the door. They noticed that the door was sealed shut. Given the totality of what they knew and what they reasonably suspected, the agents had reason to think — as the district court found — that the unseen individual was trying to destroy evidence. The agents knew that drugs can be flushed down a toilet or washed down a drain in the blink of an eye. See King, 563 U.S. at 461; Samboy, 433 F.3d at 158. Furthermore, the fact that the front door was sealed shut was itself suspicious.

Weighing these facts, the district court found that the agents were confronted by exigent circumstances. Moreover, the agents "did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment." King, 563 U.S. at 462. Thus, the court reasoned, the exigency — combined with the existence of probable cause — justified the agents' warrantless entry into the apartment. See Almonte-Báez, 2014 WL 6751207, at *1-2. We agree: when entry into private premises is reasonably necessary to head off the imminent loss of evidence, a law enforcement officer armed with probable cause normally may enter the premises without a warrant. See King, 563 U.S. at 460; Samboy, 433 F.3d at 158.

In an effort to blunt the force of this reasoning, the appellant suggests that what the agents heard was equally consistent with the sounds made by someone moving toward the front door to admit the agents. But this is whistling past the graveyard: the front door was sealed shut and, given the circumstances that obtained, a law enforcement officer might well have distinguished whether the footsteps of a person inside the apartment were moving toward his location or away from it. The sockdolager, of course, is that the district court credited the agents' impressions that the noises they heard sounded like someone running away from the front door. See Almonte-Báez, 2014 WL 6751207, at *1. That was a finding of fact, see Nuñez, 852 F.3d at 144, and it was not clearly erroneous.

In sum, the record solidly supports the district court's determination that probable cause and exigent circumstances coalesced to justify the agents' warrantless entry into the Cedar Street apartment. Consequently, the evidence found in plain sight at the time of that entry, together with the evidence gathered as a result of the ensuing warrant-backed search, was admissible at trial. It follows inexorably, as night follows day, that the district court did not err in denying the appellant's motion to suppress.

**III.  CONCLUSION**

We need go no further.  For the reasons elucidated above, the judgment of the district court is

**<u>Affirmed</u>.**