# United States Court of Appeals
## For the First Circuit

No. 21-1597

UNITED STATES OF AMERICA,

Appellee,

v.

JOSÉ ANTONIO RIVERA-NAZARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Gelpí, Howard, and Thompson,
Circuit Judges.

Jackson Whetsel, with whom Eric Alexander Vos, Federal Public
Defender, Franco L. Pérez-Redondo, Assistant Federal Public
Defender, and Héctor L. Ramos-Vega, First Assistant Federal
Defender, were on brief, for appellant.
Francisco A. Besosa-Martínez, with whom W. Stephen Muldrow,
United States Attorney, Mariana E. Bauzá-Almonte, Assistant United
States Attorney, and Gregory B. Conner, Assistant United States
Attorney, were on brief, for appellee.

May 8, 2023

**GELPÍ**, **Circuit Judge**.   While this court has often recognized the importance of a defendant's right to be present in court, this right is not absolute.   Appellant Rivera-Nazario challenges his thirty-month sentence after the district court sentenced him in absentia (i.e., without him present).   He contends that the district court erred in finding him voluntarily absent and in applying an obstruction of justice sentencing enhancement. Given his numerous violations of release conditions and abscondence, we affirm the district court's decision.

## I.  Facts

We first rehearse the facts of the case, which we draw from the unchallenged portions of the Presentence Investigation Report ("PSR") and the sentencing hearing since this "sentencing appeal follows a guilty plea."   United States v. Valle-Colón, 21 F.4th 44, 46 (1st Cir. 2021) (quoting United States v. Miranda-Díaz, 942 F.3d 33, 37 (1st Cir. 2019)).

On October 1, 2019, Appellant José Antonio Rivera-Nazario was observed sitting in the staircase of a public housing facility in Bayamón, Puerto Rico, with a shoebox on his lap.   Upon seeing a plain clothes agent (a Puerto Rico police officer assigned to the U.S. Marshals Service) approach, he dropped the box and ran, but was subsequently apprehended.   From the items that fell out of the shoebox, the agent recovered 124 plastic items of marijuana;  47 plastic baggies of cocaine;  50 plastic vials of

cocaine; 49 foiled decks of heroin; $142.40 in U.S. currency; and a cell phone. He was arrested and detained following an initial appearance before a magistrate judge. On October 7, 2019, he was released on a $10,000 unsecured bond, with pretrial supervision, and ordered to work, reside with his consensual partner, who was designated as his third-party custodian, and comply with standard conditions of release, including that he not use or unlawfully possess a narcotic drug or other controlled substances.

Rivera-Nazario was subsequently indicted by a grand jury, which charged him with the following four counts: knowingly and intentionally possessing with the intent to distribute a mixture or substance containing heroin (Count I), cocaine (Count II), cocaine base (Count III), and marihuana (Count IV), all in violation of 21 U.S.C. §§ 841(a)(1) and 860(a). He initially pleaded not guilty; but, on March 4, 2020, he appeared before a magistrate judge who conducted Rule 11 proceedings and took his straight guilty plea which was later accepted by the district judge. From then on, Rivera-Nazario, who remained under conditions of release, engaged in an escalating series of violations of his release conditions.

As outlined, Rivera-Nazario was required to abstain from using controlled substances and also to respond to home visits, answer randomly-placed phone calls, and attend in person appointments, all with the United States Office of Probation and

Pretrial Services. However, on April 22, 2020, the probation officer assigned to him reported to the district court that Rivera-Nazario had violated his release conditions by testing positive for marijuana, after denying use of controlled substances. Moreover, he failed to be present when the probation officer conducted a home visit, failed to report to the probation office for appointments, and repeatedly skirted supervision phone calls, excusing his inability to pick up with pretexts such as that he was "in the bathroom," the call was placed at an "unacceptable time," "he did not have signal," and he "had left his charger" behind. Consequently, the probation officer requested that the district court modify Rivera-Nazario's release conditions to home detention and location monitoring via an electronic monitoring device, which permitted him to leave home only upon approval by the probation officers and only for certain reasons (e.g., employment, education, and medical). The district court granted the modification.

On August 12, 2020, the probation officer again reported numerous violations of the modified release conditions, including that Rivera-Nazario admitted illegal use of controlled substances, repeatedly left his residence without authorization throughout mid-July to early-August, and, on July 17, 2020, admitted that he went to a friend's house to play video games without prior approval, and failed to return home. After "verbally

- 4 -

reprimand[ing]" Rivera-Nazario, the probation officer requested yet another modification to his release conditions; this time, home incarceration. The district court again granted this request.

On August 27, 2020, following the death of his mother the month prior, Rivera-Nazario requested a thirty-day modification to his release conditions to an open schedule on weekdays from 8:00 A.M. to 4:00 P.M. to tie up his mother's affairs at various government agencies. He volunteered to surrender following the thirty-day period. But, the next day, before the district court could issue a decision, the probation officer filed yet another request for a modification. The probation officer noted that Rivera-Nazario repeatedly left his residence without authorization -- on August 15, 16, 17, 19, 20, 21, 22, 23, 25, and 27 -- and refused to respond to phone calls, video calls, and/or text messages. The probation officer then requested a warrant for his arrest.

Before an arrest warrant was issued, however, on September 2, 2020, the probation officer informed the district court that Rivera-Nazario had left his residence without authorization on August 29, 30, and 31, and that on September 1, 2020, Rivera-Nazario collected his belongings from his third-party custodian's residence (his partner) and absconded (i.e., left the residence where he was required to be). The probation officer

again requested an arrest warrant, which the district court granted while denying Rivera-Nazario's August 27, 2020, request.

Approximately ten months later, on July 14, 2021, while Rivera-Nazario was still at-large,[1] the district court judge, citing Federal Rule of Criminal Procedure 43, issued a scheduling order setting Rivera-Nazario's sentencing hearing to be held in absentia one week later, on July 21, 2021. By then, the probation officer had prepared a PSR and calculated Rivera-Nazario's federal sentencing guidelines range, which concluded that the base offense level was 18 and factored in a 3-level decrease since Rivera-Nazario accepted responsibility, amounting to a total offense level of 15. Combined with a criminal history Category of I, his guideline sentencing range was 18-24 months.

Rivera-Nazario did not appear at his sentencing hearing. His new counsel[2] informed the district court that he had been unable to reach him and, that even though he thought the court "would ultimately be allowed to proceed because . . . the finding of voluntariness [is] perhaps justified in this case," out of an

---

[1] We note that the record is unclear as to what exactly happened with the electronic monitoring device the district court ordered on April 23, 2020 to track Rivera-Nazario's location.

[2] In June 2021, a month before Rivera-Nazario's sentencing hearing would take place, he was assigned new counsel from the Federal Public Defender's office as his original attorney, who handled the Rule 11 proceedings, left the Defender's office, necessitating the substitute.

"abundance of caution," requested the hearing be postponed for thirty days to determine whether Rivera-Nazario "really is voluntarily absent." By then, the arrest warrant had been outstanding for ten months. The district court judge then requested, during the hearing, an update from the U.S. Marshal's Office on efforts to locate Rivera-Nazario, and, in an email to the courtroom deputy, the Marshal's relayed that Rivera-Nazario continued to visit his partner, and the Marshals expected to detain him upon further surveillance. The judge provided that update to counsel in a sealed sidebar conference.[3]

The district court proceeded to hear from both parties on the issue of voluntary absence and ultimately held that, pursuant to Rule 43(c)(1)(B), the sentencing hearing would be held that day in absentia. The government relayed that Rivera-Nazario had not complied with release conditions beginning in April 2020, that the probation officer tried to help him comply by moving for more restrictive conditions and reminding him about his obligations (when he did respond), but that he continued to ignore phone calls and was "nowhere to be found" in August 2020. Citing the government's "detailed summary," the motions filed by the probation officer, and the "fact that [Rivera-Nazario],

_____

[3] This part of the district court record was sealed because at the time of the hearing, the U.S. Marshals had not yet apprehended Rivera-Nazario and the judge did not want to thwart efforts to locate him.

- 7 -

throughout" was "advised and re[-]admonished by probation as to the importance of compliance and letting his whereabouts be known, was assisted by counsel," knew that "sentencing proceedings remained pending," and "chooses where he goes and what he does, and of course [] has not chosen to contact counsel or Pretrial Services and present himself to the Court or surrender," the district court found that Rivera-Nazario was voluntarily absent.

The district court proceeded to sentencing. It calculated an initial adjusted base offense level of 18, reduced it by 3 since he accepted responsibility, and added 2 additional points for obstruction of justice citing U.S.S.G. §3C1.1 because "[Rivera-Nazario] attempted to flee, and . . . he has voluntarily absconded while . . . pending sentenc[ing], and has remained absconded during the past ten months." Based on a total offense level of 17 and a criminal history Category of I, the guideline imprisonment range was 24 to 30 months, a fine range of $10,000 to $95,000, and supervised release of at least six years for Count I, II, and III and four years for Count IV -- a higher sentencing range than the 18 to 24 months proposed by the PSR, which did not consider the obstruction of justice adjustment. After discussing the 18 U.S.C. § 3553(a) sentencing factors -- including Rivera-Nazario's upbringing, education level, physical and mental health, history of drug use, and the nature of the offense (namely, that the facts indicated that he was on a drug selling shift when he

was apprehended) -- the district court imposed a 30-month sentence for Count I, II, III, and IV, to run concurrently.

Defense counsel objected to holding the hearing in absentia, the finding of voluntary absence, and the imposition of the obstruction of justice enhancement based on an objection to the willfulness finding. This timely appeal followed.

## II. Discussion

On appeal, Rivera-Nazario contends that the district court erred in (1) finding that he was voluntarily absent from his sentencing hearing and (2) in applying an obstruction of justice enhancement. We discern no error in either determination and affirm.

## A. In Absentia

We begin with Rivera-Nazario's voluntary absence argument. He argues that the district court clearly erred in finding that he was voluntarily absent from his sentencing hearing because, before making such a finding, it should have granted a continuance and required additional information. That clearly erroneous fact-finding, he contends, amounted to an abuse of discretion. We conclude that the district court was aware of sufficient facts to draw a reasonable inference that Rivera-Nazario was voluntarily absent.

Our circuit has not yet addressed the standard of review in an appeal challenging a sentencing in absentia, but we see no

- 9 -

reason why we might depart from the abuse of discretion standard established in cases of sentencing error, see United States v. Ríos-Rivera, 913 F.3d 38, 44 (1st Cir. 2019), and regarding trials conducted in absentia, see United States v. Guyon, 27 F.3d 723, 727 (1st Cir. 1994) (reviewing a district court's decision to proceed with trial after it had commenced for abuse of discretion). Accordingly, we apply the abuse of discretion standard and "evaluate [the district court's] fact-finding for clear error." Ríos-Rivera, 913 F.3d at 44; see also United States v. Ornelas, 828 F.3d 1018, 1021 (9th Cir. 2016). "Clear-error review is demanding:  this standard will be satisfied only if, upon whole-record-review, an inquiring court forms a strong, unyielding belief that a mistake has been made." United States v. Nuñez, 852 F.3d 141, 144 (1st Cir. 2017) (cleaned up). As long as the district court's decision is based on reasonable inferences drawn from adequately supported facts, we will not find clear error. United States v. Brown, 31 F.4th 39, 46 (1st Cir. 2022).

Rule 43 of the Federal Rules of Criminal Procedure requires that a defendant be present at every stage of trial. However, this right can be waived. Section (c) of the same permits a court to sentence a defendant in absentia "in a noncapital case, when the defendant is voluntarily absent during sentencing." Fed. R. Crim. P. 43(c)(1)(B); see also Crosby v. United States,

506 U.S. 255, 258 (1993).[4] As already outlined, the district court found Rivera-Nazario voluntarily absent given his numerous violations of release conditions, the fact that he was informed of the importance of compliance with these conditions, and the fact that he knew that sentencing proceedings remained pending.

The record supports the district court's finding since it reveals a growing number of pretrial violations in the lead up to Rivera-Nazario's sentencing hearing, which in this context support a reasonable inference of voluntary absence. See United States v. Watkins, 86 F. App'x 934, 937 (6th Cir. 2004) (holding that district court did not clearly err in finding voluntary absence from sentencing where the record supported a "pattern of evasion from legal supervision and [the defendant's] decision to remain at-large on an outstanding arrest warrant for [several] months"). According to the terms of his release conditions, Rivera-Nazario was required to report to the probation officer regularly, submit to random drug testing, reside with his third-party custodian, and refrain from using controlled substances. Yet he failed to comply with each of these conditions, and instead, as evident by the facts we have already outlined and need not rehash, developed a pattern of evading legal supervision, and

---

[4] Rivera-Nazario makes no argument that his sentencing in absentia was unconstitutional, so we need not address that argument or the constitutional dimension of his presence at sentencing.

eventually arrest. Significantly, he failed to report to the probation officer not once, not twice, but on dozens of occasions throughout the spring and summer of 2020.

As evidenced by the record, the probation officer tried to help him comply by requesting an escalating set of modifications -- from location monitoring to the eventual arrest warrant -- with the district court, but this did not produce results. For months, Rivera-Nazario continued to evade the probation officer's phone calls and, in July and August, was essentially nowhere to be found until he eventually collected his belongings from his third-party custodian's home and absconded, knowing full well the conditions of his release, the importance of reporting to the probation officer (given that the officer made this known to him), and that a sentencing hearing was on the horizon. He remained at-large not only for the ten months that transpired from the date of the arrest warrant to his sentencing hearing, but well after the sentencing hearing, until he was finally apprehended. Thus, given the numerous violations of supervision and release conditions leading up to the sentencing hearing, and despite repeat admonishment from the probation office, it was not clearly erroneous for the district court to draw the reasonable inference that he was voluntarily absent when he failed to appear at sentencing. Indeed, Rivera-Nazario had

collected his belongings from his partner's home and had not reported to the Probation Office in nearly one year.

Rivera-Nazario makes several unpersuasive arguments. He suggests that certain circumstances -- such as his appearance at all scheduled proceedings with the district court prior to his sentencing hearing, his request for a modification to his release conditions in exchange for his voluntary surrender, and his facing a relatively lenient sentence since he was a "first-time offender with no history of violence" -- might counsel against a finding of voluntary absence. But when we take these circumstances together with his long record of violations, the argument is futile. Rivera-Nazario had a choice as to whether to comply with his release conditions and he again and again voluntarily chose not to. A district court thus could infer that the next choice (not appearing at sentencing) in a series of repeat violations was a voluntary one. See Ornelas, 828 F.3d at 1022 (reasoning that voluntary absence finding was supported by the record where the defendant "had appeared at multiple hearings (at least four) prior to the sentencing and acknowledged that his presence was required at the sentencing hearing," but then failed to appear).

We re-emphasize that "[c]lear-error review is demanding," Nuñez, 852 F.3d at 144, and when these facts are taken together with Rivera-Nazario's undisputed track record of ignoring court-imposed release conditions (in particular his leaving his

third-party custodian's home), while being advised by counsel, we cannot say that the district court committed clear error. Indeed, his failure to provide an explanation, even on appeal, as to his absence at sentencing is concerning. Thus, based on our review of the entire record, we simply are not left with "a strong, unyielding belief that a mistake has been made." Id. (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010)).

Rivera-Nazario suggests that the district court should have conducted a more searching inquiry into his absence. More specifically, he contends that we should adopt the approach taken by the Seventh Circuit in United States v. Achbani, where the court advised that "the district court must explore on the record any 'serious questions' raised about whether the defendant's absence was knowing and voluntary." 507 F.3d 598, 601-02 (7th Cir. 2007). Further investigation was necessary, he argues, given that he was "struggling with unemployment," a "substance-use disorder[,] and the death of his mother," all during the COVID-19 pandemic. But even if we followed the Seventh Circuit's approach in Achbani, Rivera-Nazario would still come up short. There, the court made clear that "the district court's duty to explore" any "serious questions raised about whether the defendant's absence was knowing and voluntary" depends upon whether "defense counsel suggests circumstances that raise a plausible doubt that the defendant's

- 14 -

absence was voluntary." Id. (cleaned up and collecting cases assessing a defendant's voluntary absence from trial). Here, however, defense counsel did not raise any explanation whatsoever as to Rivera-Nazario's absence. To the contrary, counsel conceded that he thought the court "would ultimately be allowed to proceed, because [he thought] the finding of voluntariness [is] perhaps justified in this case," and then asked for a continuance to assess what efforts, if any, had been taken to locate him and if "he really is voluntarily absent." Thus, the district court did not clearly err when it found Rivera-Nazario voluntarily absent without inquiring further into the reasons behind his absence. See Ornelas, 828 F.3d at 1022 (finding no error where defense counsel failed to raise below any of the explanations pressed on appeal for defendant's absence, so "the sentencing court had no reason to inquire further").

Accordingly, we affirm the district court's finding of voluntary absence, as there was no clear error. Because Rivera-Nazario offers no other basis to challenge his sentencing, we also conclude that the district court did not abuse its discretion in holding his sentencing hearing in absentia.

## B. Obstruction of Justice Enhancement

We next turn to the district court's imposition of a two-level sentencing enhancement for obstruction of justice. Rivera-Nazario argues that the district court erred in applying

the enhancement under U.S.S.G. §3C1.1 because the district court failed to give counsel advance notice of its intent to apply it as required by Rule 32 of the Federal Rules of Criminal Procedure and because the government failed to meet its burden of proving that Rivera-Nazario 1) acted "willfully" in not appearing at the hearing and 2) had the specific intent to obstruct justice. Fed. R. Crim. P. 32.

We review for clear error any of the district court's fact-finding that Rivera-Nazario willfully obstructed justice with respect to his sentencing and review de novo its interpretation and application of the obstruction of justice enhancement. See United States v. Nygren, 933 F.3d 76, 82 (1st Cir. 2019).

We first dispose of the advance notice argument. We have held that advance notice is not required where "a court decides that an upward adjustment is warranted based on offense or offender characteristics delineated within the Sentencing Guidelines themselves, at least where the facts relevant to the adjustment are already known to defendant" since "the [G]uidelines themselves provide notice to the defendant of the issues about which he may be called upon to comment." United States v. Canada, 960 F.2d 263, 266-67 (1st Cir. 1992) (emphasis omitted); see also United States v. Plasencia, 886 F.3d 1336, 1344 (11th Cir. 2018) ("[W]hen, as here, the circumstances afford a defendant notice that he engaged in conduct that may result in the application of

a Guidelines enhancement, the court need not provide additional notice of its intention to apply the enhancement sua sponte -- the Guidelines themselves provide adequate notice."). While the district court's intent to impose the enhancement was not expressly communicated to Rivera-Nazario, the underlying facts relevant to obstruction of justice were well-known to him given that he was aware of his numerous violations of release conditions, had been counseled on these violations, and was warned about them by the probation officer. In fact, counsel had advance warning that the district court would sentence Rivera-Nazario in absentia should he fail to appear because the scheduling order setting the sentencing date indicated as much. Thus, because Rivera-Nazario was aware of the factual predicate underlying the enhancement, the district court did not err in not providing advance notice.

Rivera-Nazario also argues that without notice of the enhancement or a continuance, he suffered prejudice because his counsel lacked the opportunity to conduct research on the enhancement and to argue that there was insufficient evidence to find willful obstruction of justice -- an opportunity that was required under Rule 32(i)(1)(c), which provides that courts "must allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(c). But we see no prejudice since, as discussed, his attorney knew of the possibility of

sentencing in absentia, given the language in the district court's scheduling order, and Rivera-Nazario was aware of the facts underlying the enhancement.

Having determined that advance notice was not required, we turn to the substance of Rivera-Nazario's claim. He argues that the district court erred in applying the two-level enhancement because the government failed to show that he acted "willfully" in failing to appear.

Section 3C1.1 of the Sentencing Guidelines mandates a two-level enhancement "if (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. §3C1.1. According to Application Note 4(E) of §3C1.1, one such way a defendant can obstruct justice is by "willfully failing to appear, as ordered, for a judicial proceeding."

Without more, Rivera-Nazario argues that because the government has failed to establish voluntary absence, it a fortiori failed to demonstrate willful conduct. But, for the same reasons the record supports the district court's finding of voluntary absence, the record also supports the two-level enhancement.[5] See

_____

[5] We are careful to note that, although a finding of willfulness is appropriate here, a finding of voluntary absence does not automatically trigger a finding of willfulness when considering an obstruction of justice enhancement.

- 18 -

Watkins, 86 F. App'x at 937 (holding that for the same reasons a finding of voluntary absence was not clearly erroneous, a finding of willfulness was not either). Rivera-Nazario violated dozens of release conditions, failed to appear at his sentencing hearing, left his third-party custodian's home without the permission of pretrial services, and remained at-large for over ten months. Everything about these circumstances suggests willfulness. "A criminal defendant who evades authorities and fails to appear for a sentencing hearing has obstructed justice; and '[t]o hold otherwise would condone direct disobedience of a court's conditional release order.'" Fuller v. United States, 398 F.3d 644, 652 (7th Cir. 2005) (quoting United States v. Williams, 374 F.3d 941, 948 (10th Cir. 2004)). Thus, the district court did not err in applying the enhancement.

Finally, Rivera-Nazario re-invites us to address whether district courts must make a particularized finding that a defendant had a specific intent to obstruct justice to impose a §3C1.1 enhancement. We decline to address this question as the record, as elucidated above, supports the enhancement. See United States v. Hall, 434 F.3d 42, 61-62 (1st Cir. 2006) (declining to address whether particularized finding of specific intent to obstruct justice is required where "evidence clearly supports the district court's ultimate" obstruction of justice finding).

For the foregoing reasons, the sentence is **affirmed**.