**UNITED STATES of America,**
**Appellee,**

v.

**Donald WOODWARD, Defendant,**
**Appellant.**

**No. 01–1734.**

United States Court of Appeals,
First Circuit.

Heard Nov. 7, 2001.

Decided Jan. 18, 2002.

---

Neal K. Stillman for appellant.

Margaret D. McGaughey, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

Before SELYA, Circuit Judge,
COFFIN, Senior Circuit Judge, and
SARIS,* District Judge.

SARIS, District Judge.

After pleading guilty to child pornography and gun charges, defendant-appellant Donald Woodward ("Woodward"), a paraplegic, appeals his sentence of one hundred thirty-five months, arguing: (1) that the district court erroneously applied a five-level enhancement for engaging in a pattern of sexual exploitation under United States Sentencing Guideline ("U.S.S.G.") § 2G2.2(b)(4); and (2) that the district court misunderstood the scope of its authority under U.S.S.G. § 5H1.4 to grant a downward departure based on his extraordinary physical impairments.

We hold that the district court properly applied Section 2G2.2(b)(4) in finding a pattern of sexually exploitative behavior based on Woodward's prior multi-count conviction in 1979, as well as his history of other sexual misconduct. We further hold that we lack jurisdiction to hear the second challenge because the district court recognized its authority to depart downward under Section 5H1.4, but declined to do so. We therefore **AFFIRM** the district court on both grounds.

## I. BACKGROUND

On June 5, 2001, Woodward pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2); seven counts of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1); and one count of possession

of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The sentencing hearing took place on May 7, 2001.

In describing the offense conduct, the presentence report ("PSR") stated the following. On February 16, 1999, government agents executed a warrant to search Woodward's home in North Berwick, Maine, and recovered thousands of images depicting nude minors and minors engaged in sexual activities or displaying their genitals, as well as several movies with minors engaged in sexual activity with an adult. At least two of these pictures depicted sadistic or masochistic conduct. The images received by Woodward over the Internet included those sent by an individual who admitted to Woodward in an Internet chatroom that he was sexually assaulting the six-year-old child who appeared in some of the images. The police also seized two firearms. During the search of his home, Woodward told agents that he had been trading child pornography over the Internet for four years. Woodward terminated all contact with the person who was having sex with the six-year-old as soon as he learned of the sexual abuse.

With respect to Woodward's criminal background, the PSR also disclosed that in 1979, Woodward had been convicted after a guilty plea in Massachusetts state court to two counts of rape of a child and two counts of posing or exhibiting a child. Woodward received a sentence of five-to-ten-years imprisonment for the rape charges and five-to-seven-years imprisonment for the other two counts. The rape offenses occurred between July 1, 1977, and September 30, 1978, and the posing offenses occurred between January 1, 1978, and September 30, 1978. The PSR also stated that Woodward had been

---

* Of the District of Massachusetts, sitting by designation.

charged by indictment with two counts of unnatural acts with a child, for activities taking place between July 1, 1977, and September 30, 1978; with indecent assault and battery on a child under 14, for activities taking place between June 1, 1974, and September 30, 1974; and for being a lewd person over the same 1974 period. These charges were filed with the defendant's consent after a plea of guilty. Woodward was released from custody on February 24, 1989.

In an addendum to the PSR, following an objection by the defendant, the probation officer verified that the state charges involved conduct in which Woodward had photographed children engaged in sexually explicit conduct both with Woodward and with each other over several years. Based on a conversation with the investigating officer in Massachusetts, the probation officer reported that these crimes involved twelve to fifteen neighborhood children during a four-year period between 1974 and 1978.

The PSR also reported that Woodward, age 53, has been paralyzed and confined to a wheelchair since 1967. He has had three blocked arteries in his heart and suffers from diabetes. Woodward takes between ten and fourteen medications as a result of these conditions, and has been hospitalized many times.

The sentencing court imposed a five-level enhancement under U.S.S.G. § 2G2.2(b)(4) for a pattern of activity involving the sexual abuse or exploitation of a minor. It also denied Woodward's request for a downward departure for ex-traordinary physical impairment under U.S.S.G. § 5H1.4. Woodward received a sentence at the low end of the guideline range of one hundred thirty-five (135) months.[1]

## II. DISCUSSION

### A. Pattern of Sexual Abuse or Exploitation

U.S.S.G. § 2G2.2(b)(4) mandates a five-level increase in the base offense level "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor...." Commentary Note 1 to Section 2G2.2 states:

"Pattern of activity involving the sexual abuse or exploitation of a minor" means any combination of two or more separate instances of the sexual abuse or exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same or different victims; or (C) resulted in a conviction for such conduct.

The Commentary also makes explicit that "[i]f the defendant engaged in the sexual abuse or exploitation of a minor at any time (whether or not such abuse or exploitation occurred during the course of the offense or resulted in a conviction for such conduct) and subsection (b)(4) does not apply, an upward departure may be warranted." U.S.S.G. § 2G2.2, comment. (n.2).

 Woodward challenges the sentencing court's application of the Section

---

1. The sentencing court also applied two separate two-level enhancements pursuant to U.S.S.G. §§ 2G2.4(b)(1) and 2G2.2(b)(1) because the material involved a prepubescent minor or one under the age of 12; a two-level enhancement pursuant to U.S.S.G. § 2G2.4(b)(2) because the offense involved possession of ten or more items containing a visual depiction involving the sexual exploitation of a minor; a two-level enhancement pursuant to U.S.S.G. § 2G2.4(b)(3) because Woodward's possession of the material resulted from the use of a computer; and a four-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(3) because the materials portrayed sadistic or masochistic conduct.

2G2.2(b)(4) enhancement, claiming that his "single prior conviction" did not constitute a pattern of sexual exploitation or abuse and was too old to be considered. When reviewing a district court's decision to enhance a sentence from the base offense level, we employ a bifurcated standard of review. Legal determinations of the guideline's meaning and scope are reviewed *de novo*. *United States v. Duclos*, 214 F.3d 27, 30 (1st Cir.2000). We give due deference to the district court's findings of fact, reversing them only for clear error. *Id.* The government has the burden of proving the facts central to upward adjustments in offense levels by preponderance of the evidence, not by proof beyond a reasonable doubt. *United States v. Aymelek*, 926 F.2d 64, 67 (1st Cir.1991).

■■■ Woodward first argues that there weren't enough instances of child abuse or exploitation to constitute a "pattern" under Section 2G2.2. He correctly states that neither his receipt nor his possession of child pornography constitutes sexual abuse or exploitation of a minor for the purpose of establishing a pattern under Section 2G2.2(b)(4). *See id.*, comment. (n.1) (" 'Sexual abuse or exploitation' does not include trafficking in material relating to the sexual abuse or exploitation of a minor."); *see also United States v. Chapman*, 60 F.3d 894, 900 (1st Cir.1995)(holding that sexual exploitation as used in subsection (b)(4) does not include the computer transmission of child pornography). With these offenses out of the way, he claims that his "single prior conviction" in 1979 was the only other sexual misconduct before the sen-

tencing court, and thus could not constitute a pattern.

In addition to Woodward's 1979 conviction on two counts of rape and two counts of posing or exhibiting a child, which (as defendant conceded in his appellate brief) involved more than one victim, the sentencing court had before it pleas of guilty (filed) to state charges of two counts of unnatural acts with a child and one count of indecent assault and battery on a child under 14. To boot, it had the undisputed statement of the presentence report that Woodward had sexually abused between 12 and 15 children in his neighborhood between 1974 and 1978. All of this conduct may be considered in the sentence enhancement decision. *See* U.S.S.G. § 2G2.2, comment. (n.1) (stating that the sentencing judge may consider all conduct, "whether or not the abuse or exploitation . . . resulted in a conviction for such conduct"). The sentencing court had ample evidence of repeated sexual abuse or exploitation to find a pattern under Section 2G2.2(b)(4).

Appellant next argues that the sentencing court should not have considered his 1979 conviction and other instances of misconduct because they are outdated.[2] Citing our decisions in *Aymelek* and *United States v. Amirault*, 224 F.3d 9 (1st Cir. 2000), he argues that a geriatric conviction may be considered only when it shows an unusually strong penchant for serious criminality or is linked to the new conviction.

Appellant's reliance on these cases is misplaced. *Aymelek* considered a challenge to an upward departure based on

---

**2.** In *Chapman*, we held that U.S.S.G. § 2G2.2(b)(4) required that the pattern of activity warranting the enhancement must relate to the offense of conviction. 60 F.3d at 901. Subsequent to our ruling, the Sentencing Commission amended the Guideline com-

mentary to provide that no such relation was required. *See United States v. Anderton*, 136 F.3d 747, 750 & n. 2 (11th Cir.1998) (discussing effect of amendment); *see also* Thomas W. Hutchinson, et al., *Federal Sentencing Law and Practice* 570 (2001).

seven prior convictions that were not eligible for use in calculating the criminal history score because they occurred more than ten years before the offense of conviction. *See* U.S.S.G. § 4A1.2(e) (setting time period for the calculation of the criminal history category). Addressing whether the guidelines provided a basis upon which certain outdated convictions could be used to support a departure, we "read Section 4A1.3 as providing the opportunity to ground a departure on a defendant's remote convictions when and if those convictions evince some significantly unusual penchant for serious criminality, sufficient to remove the offender from the mine-run of other offenders." *Aymelek,* 926 F.2d at 72–73. This standard concerning the use of remote convictions to support an upward departure pursuant to Section 4A1.3 does not govern pattern enhancements under Section 2G2.2.

▆ *Amirault* actually undercuts Woodward's argument that there is a temporal limit on the sexual conduct applicable under Subsection (b)(4). After the defendant pled guilty to possessing three items containing visual depictions of minors engaged in sexually explicit conduct, the sentencing court upwardly departed based on defendant's past sexual conduct—that is, the taking of forty pictures of nude, minor sisters-in-law two decades earlier which had not resulted in a conviction. This court again rejected an argument that an insurmountable temporal barricade limits consideration of remote misconduct as a basis for an upward departure under section 5K2.0. *See* 224 F.3d at 13. Emphasizing the "at any time" language in the Sentencing Commission's amendment to

the Guideline Commentary for U.S.S.G. § 2G2.2, comment. (n.2), we concluded that previous "sexual assaults, although occurring long ago," could be considered for an upward departure regardless of when they occurred. *Id.* Defendant attempts to limit the breadth of *Amirault* by arguing that the past misconduct must be linked to the current conviction to constitute a pattern. He relies on the following language: "Because the retained photographs link the appellant's conduct during the offense of conviction to the earlier assaults, the assaults constituted an allowable ground on which to premise an upward departure." *Id.* at 12. The Section 2G2.2 application note contains no such linkage requirement, although the similarity of prior criminal conduct is a consideration in an upward departure decision. *See generally* U.S.S.G. § 4A1.2, comment. (n.8) (permitting the sentencing court leeway to consider convictions beyond the temporal limits "if they provide evidence of similar, or serious dissimilar, criminal conduct").

Because Woodward's previous exploitative conduct involved multiple victims in numerous incidents over a four-year period, the sentencing court permissibly applied the Section 2G2.2 sentence enhancement.

**B.** *Refusal of Downward Departure for Physical Impairment*

▆ U.S.S.G. § 5H1.4[3] allows a sentencing judge to grant a downward departure for "extraordinary physical impairment." We have long held, and recently reaffirmed, that "a refusal to depart is unreviewable unless the district court

---

**3.** Section 5H1.4 states:

Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment

may be a reason to impose a sentence below the applicable guideline range; e.g. in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

based [its decision] on an error of law." *United States v. Dewire,* 271 F.3d 333, 337–38 (1st Cir.2001) (quoting *United States v. Santos,* 131 F.3d 16, 21 (1st Cir. 1997)); *see also United States v. Romero,* 32 F.3d 641, 653 (1st Cir.1994)(no appellate review of departure decision, unless it is "based upon the court's mistaken view that it lacks the legal authority to consider a departure").

■ The sentencing court expressly recognized its legal authority to depart, but declined to do so. It began its ruling on the downward departure by stating, "I start with the premise that I have the authority to depart." The court spoke in terms of the lack of justification for the departure, rather than its ability to depart, stating, "[R]eally what I am dealing with is whether there is justification for departing downward to something of the nature of five years . . . ." Later, the sentencing court ruled that "case law makes clear that [the possibility of granting home detention] does not mean that the court cannot depart downward in terms of a shorter sentence . . . but, nevertheless, taking all those matters into account, I do not conclude that the departure is justified here." In addition, the court conducted a hearing on Woodward's request for a downward departure and reviewed the videotape of his doctor's testimony, rather than rejecting it from the outset as a matter of law.

■ Woodward argues that the sentencing court was required to make an explicit factual finding concerning his claim that his physical and mental disabilities constituted an extraordinary physical impairment. While particularized findings have sometimes been required to support a departure, *see, e.g., United States v. Carey,* 895 F.2d 318, 324 (7th Cir.1990), only one circuit seems to have expressly imposed such a requirement on a decision not to grant a Section 5H1.4 departure. *See*

*United States v. Fisher,* 55 F.3d 481, 485 (10th Cir.1995); *United States v. Slater,* 971 F.2d 626, 635 (10th Cir.1992); *cf. United States v. McQuilkin,* 97 F.3d 723, 730 (3d Cir.1996)(affirming a decision not to depart under Section 5H1.4, but holding that a finding whether a disability is "an extraordinary physical impairment" is a factual finding reviewable for clear error); *United States v. Martinez–Guerrero,* 987 F.2d 618, 620 (9th Cir.1993)(same)(quoting *Slater,* 971 F.2d at 635).

This circuit has enshrined no such formalistic fact-finding requirement for a decision *not* to grant a Section 5H1.4 departure. In any event, the sentencing court's detailed assessment of Woodward's physical condition would certainly comply with any such requirement. *See United States v. Hilton,* 946 F.2d 955, 958 (1st Cir. 1991)("We think it is unrealistic to expect that busy trial judges, ruling from the bench, will be infinitely precise in their choice of language."). The judge found that Woodward had an "unusual" physical condition and suffered from a large number of "severe and very life limiting" physical infirmities, but went on to conclude that a departure was unjustified because the defendant's health would not be "materially better" if he were released early from prison.

Because the sentencing judge did not misunderstand his legal authority to depart downward, or otherwise err, we lack jurisdiction to review the sentencing court's decision not to depart downward.

***AFFIRMED.***