# United States Court of Appeals
## For the First Circuit

No. 17-1423

UNITED STATES OF AMERICA,

Appellee,

v.

DARRIN CATES,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Ronald W. Bourget and Law Offices of Ronald W. Bourget on brief for appellant.
Halsey B. Frank, United States Attorney, and Julia M. Lipez, Assistant United States Attorney, on brief for appellee.

July 25, 2018

**SELYA**, **Circuit Judge**.  A district court's factual findings at sentencing — as elsewhere — are typically reviewed for clear error.  Those heights are difficult to scale.  See United States v. Matthews, 749 F.3d 99, 105 (1st Cir. 2014).  This case aptly illustrates the point.

Defendant-appellant Darrin Cates pleaded guilty to possession of child pornography, some of which depicted minors under twelve years of age.  He now challenges his 120-month prison sentence.  Concluding, as we do, that the defendant's assignments of error are impuissant, we affirm.

## I. BACKGROUND

We rehearse the relevant facts and travel of the case (reserving some details for discussion in connection with specific issues).  Since "this appeal trails in the wake of a guilty plea, we draw the facts from the undisputed portions of the presentence investigation report (PSI Report) . . . and the transcripts of the sentencing hearings."  United States v. Coleman, 884 F.3d 67, 69 (1st Cir. 2018).

At the times relevant hereto, the defendant — a self-employed website developer — resided in Winslow, Maine, with his wife and two daughters.  In late 2014, the Maine State Police Computer Crimes Unit (MSPCCU) identified an internet protocol (IP) address registered to the defendant that had shared files associated with child pornography on BitTorrent, a peer-to-peer

- 2 -

file-sharing network.  The MSPCCU learned that, between September 15 and October 30, the defendant's IP address shared 36 torrents (large electronic files containing metadata on smaller files, which here numbered in the thousands). Based on its investigation, the MSPCCU obtained a search warrant and executed it at the defendant's residence on January 9, 2015.  During the search, the defendant admitted to using the BitTorrent network to download "billions of images and videos" of child pornography over the preceding three years.  The defendant's arrest followed, and a later forensic analysis of his external hard drive and USB flash drive revealed 826 pornographic images and 298 pornographic videos involving children between two and eleven years of age.

In due course, a federal grand jury sitting in the District of Maine handed up a single-count indictment charging the defendant with possession of child pornography.  See 18 U.S.C. §§ 2252A(a)(5)(B), 2256(8)(A).  On October 23, 2015, the defendant pleaded guilty.

When received, the PSI Report recommended a base offense level of 18 and suggested several adjustments. Pertinently, these included a five-level enhancement for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor," USSG §2G2.2(b)(5), a two-level enhancement for "knowingly engag[ing] in distribution" of child pornography, id.

- 3 -

§2G2.2(b)(3)(F), and a three-level downward adjustment for timely acceptance of responsibility, see id. §3E1.1.

At the disposition hearing, the district court considered the proposed adjustments. In mulling whether to apply the pattern of activity enhancement, the court relied on a series of MSPCCU interviews limned in the PSI Report. One such interview was with a woman (whom we shall call Jane Doe). After hearing of the defendant's arrest, Doe called the police and reported that, in 1997, the defendant — then her mother's boyfriend — had sexually abused her when she was seven or eight years old. In an interview with the MSPCCU two days later (January 13, 2015), Doe related the details of two sexual encounters. During the first such encounter, the defendant allegedly forced Doe to sit next to him while he masturbated. During the second such encounter, the defendant allegedly forced Doe to perform oral sex on him.

Doe went on to admit that she did not report the defendant's conduct to the authorities until 2001 (when she was twelve years old). At that time, she described three incidents in which the defendant allegedly forced her to touch and rub his penis with her hand and mouth.[1] She said that she had performed these acts because the defendant had threatened to hit her (as he had done in the past). In an interview with the police the following

---

[1] During the MSPCCU interview fourteen years later, Doe was unable to remember how many similar incidents had occurred.

- 4 -

day, the defendant denied Doe's allegations.  No charges were brought.

When the MSPCCU confronted the defendant regarding Doe's allegations following his January 2015 arrest, the defendant initially denied any sexual contact with Doe.  Later in the same interview, though, he described an encounter where Doe had reached for and touched his penis.  According to the defendant, he had been "embarrassed" by the incident and left the room immediately after it happened.

On June 13, 2016, the Department of Homeland Security (DHS) interviewed Doe.[2]  In this interview, Doe was able to recall that the defendant forced her to touch his erect penis through his jeans and, several days later, forced her to watch him masturbate to pornography and then forced her to perform oral sex on him.

The defendant did not deny Doe's allegations at sentencing, and the district court imposed a five-level enhancement for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor."  The court also imposed a two-level enhancement for "knowingly engag[ing] in the distribution of child pornography," finding that the defendant "distributed child pornography in a shared directory available for

---

[2] DHS's involvement stemmed from its obligation to "provide training, technical expertise, support, or coordination of child exploitation investigations, as needed, to cooperating law enforcement agencies and personnel."  6 U.S.C. § 473(b)(2)(C).

download over a peer-to-peer network and knew he was doing so." The court based this finding on, among other things, the premise that although "there's no evidence that [the defendant] actively distributed any pornography to anyone . . . [he made] his platform available for others to receive pornography that was on his computer."

The court further found that the defendant had timely accepted responsibility for the offense of conviction and had neither falsely denied nor frivolously contested any relevant conduct. Accordingly, the court granted a three-level downward adjustment for acceptance of responsibility.

As adjusted, the defendant's total offense level was 35. Coupled with his placement in criminal history category I, this offense level yielded a guideline sentencing range of 168 to 210 months. The court reviewed the pertinent sentencing factors, see 18 U.S.C. § 3553(a), and attempted to balance the defendant's conduct against what it perceived to be the aggregate severity of the child pornography guidelines. In the end, the court imposed a below-the-range sentence: a 120-month term of immurement. This timely appeal ensued.

## II. ANALYSIS

In this venue, the defendant challenges both the five-level enhancement for "engag[ing] in a pattern of activity involving the sexual abuse or exploitation of a minor," USSG

§2G2.2(b)(5), and the two-level enhancement for "knowingly engag[ing] in [the] distribution" of child pornography, id. §2G2.2(b)(3)(F). We examine these challenges separately.

At the outset, we pause to set the standard of review in place. For preserved claims of sentencing error, "we review the sentencing court's 'interpretation and application of the sentencing guidelines' de novo, [and] the court's 'factfinding for clear error.'" United States v. Ortiz-Carrasco, 863 F.3d 1, 3 (1st Cir. 2017) (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015)). So, too, we review only for clear error a sentencing court's findings based on inferences drawn from discerned facts. See United States v. Nuñez, 852 F.3d 141, 144 (1st Cir. 2017). In undertaking appellate review of the defendant's claims of error, we remain mindful that "the government bears the burden of proving sentence-enhancing factors by a preponderance of the evidence." Id.

## A. Pattern of Activity.

Through the pattern of activity enhancement, a defendant's offense level may be increased by five levels "[i]f the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." USSG §2G2.2(b)(5). The commentary to the sentencing guidelines — which we generally treat as authoritative unless it conflicts with federal law, see Stinson v. United States, 508 U.S. 36, 38 (1993) — supplies a gloss. It

- 7 -

defines a "pattern of activity" as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant."  USSG §2G2.2, cmt. n.1.  In this case, the sentencing court found the requisite pattern of activity based on Doe's allegations about the 1997 encounters.

The defendant attacks this finding on three fronts.  All of these attacks fail.

**1.  <u>Catch-22.</u>**  The defendant's most ferocious attack posits that he was unable to refute the facts underlying the pattern of activity enhancement without jeopardizing his offense-level reduction for acceptance of responsibility.  <u>See</u> USSG §3E1.1. He says that he was trapped in a "catch-22":  if he contested Doe's allegations about the 1997 encounters and did not prevail, he might be subject not only to the five-level pattern of activity enhancement but also to the loss of the three-level acceptance of responsibility reduction.  Forcing him to choose between challenging the enhancement and retaining the reduction, his thesis runs, was fundamentally unfair.

The defendant does not identify the legal doctrine upon which this argument is premised.  We assume, favorably to the defendant, that he is mounting an argument under the Due Process Clause.  <u>See</u> U.S. Const. amend. V; <u>see</u> <u>also</u> <u>Kandamar</u> v. <u>Gonzales</u>, 464 F.3d 65, 69 (1st Cir. 2006) (analyzing non-specific unfairness claim as due process claim).  Because this argument was made below

and turns on a question of law, it engenders de novo review.  See United States v. Chiaradio, 684 F.3d 265, 282 (1st Cir. 2012).

We begin our appraisal by tracing the contours of the acceptance of responsibility reduction.  A defendant's offense level may be reduced by two levels if the defendant "truthfully admit[s] the conduct comprising the offense[] of conviction, and truthfully admit[s] or [does] not falsely deny[] any additional relevant conduct," USSG §3E1.1, cmt. n.1(A), and by an additional level if the defendant gives timely notice of his intention to enter a guilty plea, see id. §3E1.1(b).  Here, the defendant does not contest the district court's finding that the sexual abuse of Doe constituted additional relevant conduct.  See USSG §1B1.3. Consequently, the defendant could have lost the reduction for acceptance of responsibility only if the sentencing court determined that he had "falsely denie[d] or frivolously contest[ed]" Doe's allegations.  USSG §3E1.1, cmt. n.1(A).

Seen in this light, what the defendant mistakenly envisions as a catch-22 is merely an illusion.  The defendant could have denied the facts upon which Doe's allegations rested without jeopardizing the reduction for acceptance of responsibility so long as his denial was truthful.  See Coleman, 884 F.3d at 73. That prophylaxis gave the defendant all the process that was due. It is, after all, apodictic that the shield of due process does not protect a defendant from the consequences of falsely denying

- 9 -

allegations against him.  Cf. United States v. Batista-Polanco, 927 F.2d 14, 22 (1st Cir. 1991) ("[N]o criminal defendant enjoys a constitutional privilege to testify falsely.").

Seeking to move his case to a different plateau, the defendant points to the district court's comments regarding the potential consequences of falsely denying or frivolously contesting Doe's allegations.  At sentencing, the following colloquy took place:

> COURT:  Let me be clear about what I'm doing with acceptance.  I don't consider his raising this issue to be a basis to deny acceptance.
>
> DEFENSE COUNSEL:  Okay.
>
> COURT:  I'm not going to do that.
>
> DEFENSE COUNSEL:  All right.
>
> COURT:  It seems to me that there's enough ambiguity to justify what seems to me to be a legitimate legal issue, and he hasn't taken the stand.  If he were to take the stand and actively deny any of this, that would be another matter.  But he hasn't done that.  So I will not deny acceptance, if that helps.
>
> DEFENSE COUNSEL:   . . . [W]e await your decision and we offer no further evidence on this.

These comments, the defendant complains, had a chilling effect which deterred him from attempting to defend against Doe's allegations.  This plaint comprises more cry than wool:  the district court took great pains to explain that the defendant would

- 10 -

not lose the acceptance of responsibility reduction as long as he testified truthfully.

To be sure, the district court's transparency about the risks of testifying may have caused the defendant to question his ability to refute Doe's allegations and to that extent may have discouraged him from testifying. Even so, there was nothing coercive or unduly minatory about the court's comments; as we previously have stated, a court can "educate[]" a defendant about the potential consequences of a particular litigation strategy without running afoul of the Due Process Clause. United States v. Stile, 845 F.3d 425, 431 (1st Cir. 2017) (holding that sentencing court's admonitions to defendant about dangers incident to decision to testify did not constitute "threat designed to scare off" defendant from testifying). That is precisely what happened here: for aught that appears, the defendant's informed choice to remain silent and forgo the gamble inherent in contesting Doe's allegations was a strategic decision, not the product of an unconstitutional bludgeoning by the district court. See id.

If more were needed — and we do not think that it is — we note that this case is at a considerable remove from the type of situation where a judicial admonition might effect a violation of due process. For example, in Webb v. Texas, 409 U.S. 95 (1972) (per curiam), the Supreme Court held that a trial judge's direct threat against the sole defense witness in a criminal jury trial

- 11 -

deprived the defendant of due process.  See id. at 98.  But there — as we explained in Stile — the judge "singled out the witness for a direct admonition to the effect that [he] need not testify, and if he did and lied, the . . . judge would personally see to it that he was indicted for perjury, followed by a likely conviction and sentence."  845 F.3d at 430.  Here, by contrast, the district court did not "effectively dr[i]ve [the defendant] off the stand," Webb, 409 U.S. at 98, but simply made clear the self-evident risks of testifying falsely.  Such a warning was appropriate under the circumstances.  Cf. United States v. Vavages, 151 F.3d 1185, 1189 (9th Cir. 1998) ("A defendant's constitutional rights are implicated only where the . . . judge employs coercive or intimidating language or tactics that substantially interfere with a defense witness' decision whether to testify.").

**2. One Incident or Two?**  Next, the defendant argues that a pattern of activity did not exist because there was only a single instance of sexual abuse.  As framed, this argument (which was preserved below) presents a question of law.  Thus, it engenders de novo review.  See Chiaradio, 684 F.3d at 282.

As said, a "pattern of activity" is "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor."  USSG §2G2.2, cmt. n.1.  The court below found the pattern of activity enhancement applicable because the defendant "force[d] this 7- or 8-year-old girl in 1997 to engage

- 12 -

in oral sex" after (on a previous occasion) having "required her to feel his genitals through his pants." The court noted that these two incidents were merely the "tip of the iceberg" with respect to the defendant's pattern of sexually abusing Doe.

Seeking to undermine this finding, the defendant labors to collapse the two episodes pinpointed by the district court into a single incident. In his view, the first episode was merely a failed attempt to consummate what was accomplished during the second episode. Building on this foundation, he contends that the later incident (forced oral sex) subsumed the earlier incident (forced genital touching), which had transpired a few days earlier. This effort at revisionist history rings hollow.

It cannot be gainsaid that "an attempt . . . to commit any of the offenses" constituting sexual abuse or exploitation of a minor is an independent "instance" contributing to a pattern of "two or more instances" of abuse. USSG §2G2.2, cmt. n.1. Contrary to the defendant's implication, the mere fact that the same minor was involved does not suffice to transmogrify two separate incidents into a single incident. See id. (explaining that "the same minor" can be involved in the "combination of two or more separate instances" comprising a pattern of activity). As is typical of patterns, the two incidents are similar, but they nonetheless retain their distinct character: they occurred days

apart and involved discrete sexual acts.  Consequently, each incident had independent significance.

To cinch the matter, the defendant's argument defies common sense.  A defendant cannot hit someone in the ribs on Monday, hit the same person in the face on Thursday, and then plausibly claim that he committed only a single assault because he had been aiming for the face all along.  We hold, without serious question, that the district court did not err in treating the two episodes as separate instances within the purview of section 2G2.2(b)(5).

**3. Weight of the Evidence.**  Scrabbling to gain a toehold, the defendant claims that the district court ascribed too much weight to Doe's uncorroborated allegations of sexual abuse.  Our review of this claim is for clear error.  See Nuñez, 852 F.3d at 144.  Clear error may be found only when "an inquiring court 'form[s] a strong, unyielding belief that a mistake has been made.'"  Id. (quoting United States v. Cintrón-Echautegui, 604 F.3d 1, 6 (1st Cir. 2010) (alteration in original)).  Where, as here, "raw facts are susceptible to competing inferences, the sentencing court's choice between those inferences cannot be clearly erroneous."  United States v. McCormick, 773 F.3d 357, 359 (1st Cir. 2014).

It is common ground that "'previous sexual assaults, although occurring long ago, [can] be considered' when applying a

section 2G2.2 'pattern of abuse' enhancement." United States v. Clark, 685 F.3d 72, 79 (1st Cir. 2012) (quoting United States v. Woodward, 277 F.3d 87, 90-92 (1st Cir. 2002)). The mere fact that Doe's allegations dated back some twenty years is not, in and of itself, a disqualifying circumstance. See, e.g., id. (finding allegations that dated back thirty years or more adequate to support pattern of activity enhancement); Woodward, 277 F.3d at 91-92 (finding allegations that dated back twenty-two years or more adequate to support pattern of activity enhancement); United States v. Amirault, 224 F.3d 9, 12-13 (1st Cir. 2000) (finding allegations that dated back twenty years or more adequate to support pattern of activity enhancement).

The defendant says that this case is different because Doe's allegations lack "tangible or corroborating evidence" and he was neither charged with nor confessed to the alleged acts.[3] He submits that the lack of corroboration, charges, and inculpatory statements, coupled with the age of the allegations, left the district court without a sufficient basis on which to find abuse.

---

[3] To the extent that the defendant asserts that conduct which did not result in conviction cannot count toward the pattern of activity enhancement, his assertion is flatly wrong. See USSG §2G2.2, cmt. n.1 (defining "pattern of activity" as "any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation . . . resulted in a conviction for such conduct"); see, e.g., United States v. Gaffney-Kessell, 772 F.3d 97, 101 (1st Cir. 2014); Woodward, 277 F.3d at 91.

We are not convinced. The defendant's argument gives insufficient weight to the "time-tested tenet that 'credibility determinations are part of the sentencing court's basic armamentarium.'" United States v. Bernier, 660 F.3d 543, 546 (1st Cir. 2011) (quoting United States v. Platte, 577 F.3d 387, 392-93 (1st Cir. 2009)). On appeal, we will not disturb such a determination absent "a definite and firm conviction that a mistake has been committed." Id. (quoting United States v. González-Vélez, 587 F.3d 494, 504 (1st Cir. 2009)). A careful review of the record leaves us with no such conviction.

The district court considered all of the evidence properly before it and took due account of the totality of the circumstances. It gave particular weight to the relative timeliness of Doe's 2001 report, the general consistency of her allegations across multiple interviews spanning over fourteen years, and the defendant's "contradictory" statements. The court expressed no uncertainty about its conclusion that Doe was credible, and we have no compelling basis on which to second-guess that credibility determination. See Amirault, 224 F.3d at 13 (observing that "questions of credibility . . . are uniquely within the competence of the sentencing court").

That ends this aspect of the matter. Factfinding is peculiarly within the province of the sentencing court and, affording due deference to the factual findings here, we conclude

that the court below did not err in applying the pattern of activity enhancement.

### B. **Knowing Distribution.**

This brings us to the defendant's claim that the district court erred in finding that he knowingly engaged in the distribution of child pornography. We review this finding, which resulted in a two-level enhancement, for clear error. See Nuñez, 852 F.3d at 144.

Some background helps to lend perspective. A sentencing court may increase a defendant's offense level by two levels "[i]f the defendant knowingly engaged in [the] distribution" of child pornography. USSG §2G2.2(b)(3)(F). The defendant does not deny that he took part in the act of distribution. Consequently, our inquiry here reduces to whether the defendant's distribution activities were undertaken knowingly.

The stipulation that distribution be "knowing" was not part of the original version of the child pornography guidelines but, rather, was added, effective November 1, 2016, to clarify the mens rea needed to trigger section 2G2.2(b)(3)(F). See USSG App. C, Amend. 801 (effective Nov. 1, 2016). This amendment took effect in the interim between the defendant's guilty plea and his sentencing. As a general rule, the guidelines in effect on the date of sentencing control, see United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1995) ("Barring any ex post facto

problem, a defendant is to be punished according to the guidelines in effect at the time of sentencing."), and the defendant does not dispute that Amendment 801 applies retroactively.[4]

In adopting Amendment 801, the Sentencing Commission explained that, in general, it was attempting to codify the approach of the Second, Fourth, and Seventh Circuits, all of which had held that when a "knowing distribution" enhancement is premised upon the use of a peer-to-peer file-sharing program, the enhancement requires only that a defendant know "of the file-sharing properties of the program." USSG App. C, Amend. 801; see United States v. Baldwin, 743 F.3d 357, 361 (2d Cir. 2014) (per curiam); United States v. Robinson, 714 F.3d 466, 469-70 (7th Cir. 2013); United States v. Layton, 564 F.3d 330, 335 (4th Cir. 2009). Thus, the enhancement may apply even if a defendant lacked an intent to distribute child pornography, as long as he had knowledge that by using a peer-to-peer file-sharing program, his child pornography was made accessible to others. See United States v. Ryan, 885 F.3d 449, 453-54 (7th Cir. 2018) (applying USSG §2G2.2(b)(3)(F) as amended), petition for cert. filed, (U.S. May

---

[4] In all events, the Sentencing Commission characterized Amendment 801 as a clarifying amendment. See USSG App. C, Amend. 801. When amendments are clarifying rather than substantial, they are deemed to be "purely expository." United States v. Cabrera-Polo, 376 F.3d 29, 32 (1st Cir. 2004). As such, they apply to offenses committed before their enactment. See United States v. Carrasco-Mateo, 389 F.3d 239, 245 (1st Cir. 2004).

23, 2018) (No. 17-9172); Baldwin, 743 F.3d at 361 (noting that "intent is irrelevant for an enhancement under §2G2.2(b)(3)(F)" and that the enhancement is warranted when a defendant has subjective knowledge "that his use of [peer-to-peer] software would make child-pornography files accessible to other users" (emphasis in original)).

The defendant argues that it was clear error for the district court to apply this enhancement to him because there was no evidence that he knew of the file-sharing properties of BitTorrent. This argument confuses a lack of direct evidence with a lack of evidence: the government need not prove knowledge by direct evidence, but may prove knowledge by circumstantial evidence. See Nuñez, 852 F.3d at 146. To become a member of the BitTorrent network, the defendant installed a computer program and created a "sharing folder," where files downloaded from the network were stored. By default, files stored in this folder were available for download by other BitTorrent users. Although it is possible that a user might not know about BitTorrent's file-sharing properties, the defendant was no Luddite. After installing the program, he used it to download child pornography for roughly three years before his arrest. Moreover, he was savvy enough in the use of the technology to establish a methodology by which files downloaded from BitTorrent would bypass his master hard drive and be saved automatically to the "sharing folder" housed on a

- 19 -

subservient drive. This specialized configuration, combined with the defendant's twenty years of experience as a web designer, evinced a level of technical competence that allowed the district court to find that the defendant was "relatively sophisticated in computer matters."

The defendant's descriptions of BitTorrent in his interview with the MSPCCU are also relevant. There, he demonstrated considerable familiarity with BitTorrent's file-sharing properties, acknowledging that BitTorrent drew "bits and pieces of files from all over the place," such that each file stemmed from "a lot of different seeds."[5] With regard to the sharing folder, the defendant noted that he could "stop it and shut it off" — an apparent acknowledgement of his ability to control the flow of traffic in and out of the folder. Last — but surely not least — the defendant had three years of hands-on experience downloading child pornography through BitTorrent. This concatenation of circumstances, especially when combined with the defendant's extensive use of the program, furnished a solid basis for inferring a likelihood of familiarity with its basic properties. See Ryan, 885 F.3d at 453-54 (upholding imposition of knowing distribution enhancement based partly on use of

---

[5] For present purposes, it suffices to understand a seed as a computer in possession of a file to be shared on a peer-to-peer network.

"sophisticated software").  The district court supportably drew such an inference.

The defendant tries to counter this trove of circumstantial evidence by suggesting that not all peer-to-peer file-sharing programs inform users that their files are automatically accessible for others to download.  This suggestion is a red herring:  it does not bear upon the defendant's subjective knowledge of whether his use of BitTorrent made his files available for distribution to others.  Faced with the record before it, the district court drew a reasonable inference that the defendant knew of BitTorrent's file-sharing properties.  No more was exigible to sustain a finding of knowledge.  See id.; cf. Chiaradio, 684 F.3d at 281-82 (holding that evidence of technological savvy supported jury verdict for knowing distribution of child pornography).  Discerning no clear error, we uphold the district court's imposition of the two-level enhancement for knowing distribution of child pornography.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the defendant's sentence is


**Affirmed.**