# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20149

United States Court of Appeals
Fifth Circuit

**FILED**
April 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

JOSEPH BRET LAWRENCE,

> Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, DENNIS, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Defendant-Appellant Joseph Bret Lawrence pleaded guilty to receipt and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(B) and (a)(5)(B). He did not plead guilty to the additional charge of distributing child pornography, but the district court applied a two-level sentence enhancement under U.S.S.G § 2G2.2(b)(3)(F) for such distribution.

This court previously held that § 2G2.2(b)(3)(F) did not require scienter: A defendant's use of a peer-to-peer file sharing network triggered the enhancement, with or without the defendant's knowledge.[1] Congress amended

---

[1] *United States v. Baker*, 742 F.3d 618, 623 (5th Cir. 2014).

No. 18-20149

that guideline in 2016 to require the "knowing" distribution of child pornography, but we have not addressed the amended guideline in a published opinion. We do so now, and we hold that the mere use of a peer-to-peer network is not enough to trigger § 2G2.2(b)(3)(F)'s enhancement. That enhancement may apply, however, if a defendant knows that his use of a peer-to-peer network made his child pornography files accessible to others online.

The record here shows that Lawrence knew that others online could access his child pornography files. We therefore affirm his sentence for the following reasons.

## I. FACTS AND PROCEEDINGS

In December 2015, an FBI agent conducted an investigation into the suspected sharing of child pornography. The agent identified a computer on the "Ares P2P [peer-to-peer] network"[2] with an IP address as a potential source of at least 127 files of suspected child pornography. That agent used a "law enforcement tool that allows single-source downloads" to download approximately three child pornography videos from Lawrence's computer.

The suspected IP address matched the one registered to Lawrence's home. FBI agents obtained a warrant and searched his home. The agents arrested Lawrence and advised him of his *Miranda* rights, after which he "admitted to using the Peer-to-Peer program Ares to download child pornography." He also stated that the agents would find child pornography on his laptop, desktop computer, and other electronic devices in the residence, as well as on a laptop in his vehicle.

---

[2] "Users of ARES connect and share files directly from each other's computers. Each file contains a unique digital fingerprint, or hash value, that can be identified by officers monitoring peer-to-peer networks." *United States v. Sosa-Pintor*, 741 F. App'x 207, 208 (5th Cir. 2018).

No. 18-20149

Agents seized several laptops, desktop computers, hard drives, and thumb drives. "A forensic exam was performed on these devices and Agents discovered 388 videos and 4,700 images of young children engaged in sexually explicit conduct as defined under federal law."

Lawrence was charged with three counts: (1) distribution, (2) receipt, and (3) possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B), (a)(5)(B), (b)(1), and (b)(2). In a written plea agreement, Lawrence pleaded guilty to the receipt and possession charges only, and the government dismissed the distribution charge. The plea agreement included a factual basis setting out Lawrence's conduct.

The probation officer prepared a Presentence Investigation Report (PSR) that calculated a base offense level of 22 and applied several enhancements, resulting in a total offense level of 34. That offense level, combined with Lawrence's criminal history category of I, resulted in an advisory Guidelines sentencing range of 151 to 188 months.

The PSR recommended a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution of child pornography. That recommendation was based on (1) Lawrence's use of the Ares peer-to-peer file sharing network, which allowed other users to access child pornography on his computer; (2) his admissions that he understood how peer-to-peer networks functioned and that he had used the Ares network for approximately four to five years; (3) his admission that he had collected child pornography online for sixteen years; and (4) his use of the Ares network actually resulted in the distribution of child pornography to an FBI agent.

The factual basis for Lawrence's guilty plea stated that, after he was arrested, Lawrence "acknowledged an understanding of the Peer-to-Peer file sharing system" and "stated that he knew that he was distributing child

3

No. 18-20149

pornography to others because while he was in the process of downloading child pornography, others were able to download child pornography from his shared folder." At rearraignment, Lawrence told the district court that (1) he had read and reviewed the plea agreement with his lawyer, (2) the facts set out in the factual basis were correct, and (3) he had done everything it described.

Lawrence's counsel filed a sentencing memorandum objecting to the enhancement. Counsel contended that Lawrence did not knowingly engage in the distribution of child pornography. At sentencing, the district court overruled counsel's objection, adopted the PSR, and sentenced Lawrence to 151 months in prison and 10 years of supervised release. That sentence was at the bottom of the Guidelines range. Lawrence timely appealed.

## II.  STANDARD OF REVIEW

We review the district court's interpretation of the Sentencing Guidelines de novo.[3] We review its factual findings for clear error.[4]

## III.  ANALYSIS

Lawrence contends on appeal that the district court erred by applying § 2G2.2(b)(3)(F)'s two-level enhancement. He also maintains that, because of this error, the sentence was both procedurally and substantively unreasonable.

Before § 2G2.2(b)(3)(F) was amended in 2016, its enhancement applied "[i]f the offense involved distribution." That version of the guideline did not specify a mens rea requirement, and several courts of appeal reached different conclusions about the requisite mental state in cases involving peer-to-peer file sharing networks.[5] This court held that (1) the guideline did not contain a

---

[3] *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012).

[4] *Id.*

[5] *See* U.S.S.G. Supp. to App. C, Amend. 801, at 136 (Nov. 1, 2016) (explaining the circuit split).

4

No. 18-20149

scienter requirement and (2) a defendant's use of a peer-to-peer file sharing network was sufficient to trigger the enhancement, regardless of whether the defendant knew that he was sharing child pornography.[6]

Congress amended § 2G2.2(b)(3)(F) in 2016 by adding a knowledge requirement. It struck "If the offense involved distribution" and inserted "If the defendant knowingly engaged in distribution."[7] In light of that amendment, the Sentencing Commission "generally adopt[ed] the approach of the Second, Fourth, and Seventh Circuits."[8] This court has not addressed the amended guideline in a published opinion. Today's issues are (1) how much knowledge about a peer-to-peer network must a defendant have to "knowingly engag[e] in distribution" and (2) whether Lawrence's use of the Ares peer-to-peer network satisfied that standard.

A.    **Knowing Distribution**

We have not specifically addressed how much a defendant must know to trigger the § 2G2.2(b)(3)(F) enhancement. The only time we have considered the amended guideline was in a recent unpublished opinion that affirmed an enhancement under § 2G2.2(b)(3)(F) because "there was evidence that the file-sharing service . . . provide[d] alerts that material will be shared, and [the defendant] did not disable the sharing capability in his settings."[9] In contrast, the record here is silent as to whether Lawrence "opted in" to sharing his files on the Ares network.

Lawrence contends that a defendant's mere knowledge of the file sharing properties of a peer-to-peer network is not enough for the enhancement to

---

[6] *Baker*, 742 F.3d at 623.

[7] U.S.S.G. Supp. to App. C, Amend. 801, at 131.

[8] *Id.* at 136.

[9] *United States v. Vail*, 732 F. App'x 326, 327 (5th Cir. 2018) (per curiam).

apply. He insists that the government must establish that a defendant's "peer-to-peer system stop swap[10] was not on, or that there was no password to enter [a defendant's] computer, or that some other individual actually downloaded [child pornography] from a defendant's computer, or that a discussion occurred to agree to trade or share with someone." Lawrence argues that there must be "additional factors" or "additional evidence that is suspicious . . . and demonstrates guilty knowledge" beyond mere knowledge of how a peer-to-peer network functions. To support this contention, Lawrence cites several pre-amendment cases remanding § 2G2.2(b)(3)(F) enhancements when district courts did not make specific findings about the defendants' knowledge of the file sharing properties of peer-to-peer networks.[11]

The government counters that a defendant's "knowledge that his use of the peer-to-peer program or network allows other users to view and download

---

[10] By "peer-to-peer system stop swap," Lawrence refers to the technology that allows users to "opt in" to or "opt out" of sharing their files. The commentary to the 2016 amendment explains this issue:

> Some file-sharing programs require a user to designate files to be shared during the installation process, meaning that at the time of the installation the user can "opt in" to share files, and the software will automatically scan the user's computer and then compile a list of files to share. Other programs employ a default file-sharing setting, meaning the user can "opt out" of automatically sharing files by changing the default setting to limit which, if any, files are available for sharing.

U.S.S.G. Supp. to App. C, Amend. 801, at 135.

[11] *See United States v. Baldwin*, 743 F.3d 357, 361 (2d Cir. 2014) (remanding because the district court found only that the defendant "*should have known* that his files containing child pornography would be shared, but expressly declined to find that he *in fact knew*"); *United States v. Reed*, 541 F. App'x 112, 114 (2d Cir. 2013) (remanding because the district court did not make a finding that the defendant knew he was placing files in a peer-to-peer shared folder); *United States v. Robinson*, 714 F.3d 466, 469–70 (7th Cir. 2013) (remanding because the district court did not make a finding about the defendant's knowledge when the defendant admitted being "aware that LimeWire and FrostWire were programs designed to share files and videos" but did not "realize he was distributing child pornography through these programs"); *United States v. Durham*, 618 F.3d 921 (8th Cir. 2010) (remanding when there was no admission, actual upload of child pornography, or circumstantial evidence to support the defendant's knowledge).

the child pornography" is sufficient to trigger the enhancement. The government cites several pre- and post-amendment cases that support this approach. It also contends that Lawrence's admissions and the information in the PSR establish that he had much more than a "general awareness" of how the Ares peer-to-peer network functioned.

Lawrence is correct that, without more, a defendant's use of a peer-to-peer network is not enough for the enhancement to apply. That was the point of the 2016 amendment. But the cases do not support his contention that knowing distribution requires additional "suspicious" evidence which demonstrates guilty knowledge, beyond evidence that a defendant knew his use of a peer-to-peer network made his files available to others online.

Lawrence's approach would set the bar closer to "intent" than "knowledge." As the First Circuit recently explained, the enhancement may apply "even if a defendant lacked an *intent* to distribute child pornography, as long has he had *knowledge* that by using a peer-to-peer file-sharing program, his child pornography was made accessible to others."[12]

The Second, Fourth, and Seventh Circuits' pre-amendment approach, which the Sentencing Commission "generally adopt[ed]," establishes that a defendant's knowledge that his use of a peer-to-peer network made his files accessible to others online is enough to trigger the enhancement. The courts of appeals and the Sentencing Commission agree on the issue, and no court has adopted Lawrence's proposed approach.

We hold that the two-level enhancement under § 2G2.2(b)(3)(F) applies if a defendant knows that his use of a peer-to-peer network makes his child

---

[12] *United States v. Cates*, 897 F.3d 349, 358–59 (1st Cir. 2018) (emphasis in original).

pornography files accessible to others online.[13] The mere use of a peer-to-peer network, without evidence that the defendant knew of the network's file sharing properties, is not enough. Yet we decline to impose a requirement of additional suspicious or circumstantial evidence to establish a defendant's guilty knowledge. Instead, we leave those fact-specific determinations to the able district courts, which are well equipped and well versed in determining whether a defendant's acts were done knowingly.

## B.     Lawrence's Knowledge

Lawrence's admissions and the other circumstantial evidence that he was aware of the Ares network's file sharing properties make plausible the district court's finding that Lawrence knew that his files were available to others online in light of the record as a whole. We conclude as an initial matter that the district court's application of the two-level enhancement shows that it found Lawrence knew that his files were available to others online. That court did not make an express finding about Lawrence's knowledge. It did, however, (1) adopt the PSR and PSR addenda, which specifically addressed Lawrence's knowledge, and (2) stated: "I've read [the defendant's written objections] and

---

[13] *See id.* at 359 ("In adopting Amendment 801, the Sentencing Commission explained that, in general, it was attempting to codify the approach of the Second, Fourth, and Seventh Circuits, all of which had held that when a 'knowing distribution' enhancement is premised upon the use of a peer-to-peer file-sharing program, the enhancement requires only that a defendant know 'of the file-sharing properties of the program.'"); *United States v. Ryan*, 885 F.3d 449, 454–55 (7th Cir. 2018) ("Application of the distribution enhancement is appropriate when the court finds that 'the defendant either knew, or was reckless in failing to discover, that the files he was downloading could be viewed online by other people.'" (citation omitted)); *United States v. Baldwin*, 743 F.3d 357, 362 (2nd Cir. 2014) (holding that "a district court must find that a defendant *knew* that his use of P2P software would make child-pornography files accessible to other users" (emphasis in original)); *United States v. Robinson*, 714 F.3d 466, 470 (7th Cir. 2013) ("[K]nowledge that one's files are accessible online is a prerequisite for a sentence enhancement for distribution."); *United States v. Layton*, 564 F.3d 330, 335 (4th Cir. 2009) ("Because Layton created and used a shared folder that he knew others could access to download child pornography files, the district court properly applied a two-level sentencing enhancement for distribution under [] § 2G2.2(b)(3)(F).").

the Government's response. Those objections are denied." Lawrence also admitted that he had done everything described in the factual basis for the plea agreement. The district court's adoption of the PSR and denial of Lawrence's written objections on the issue amount to a factual finding that Lawrence knew his use of the Ares network made his files available to others online.

The government has the burden of proving § 2G2.2(b)(3)(F)'s applicability by a preponderance of the evidence.[14] This fact-intensive inquiry is subject to clear-error review.[15]

Ample evidence establishes that Lawrence knew his files were accessible to others online. The factual basis for Lawrence's guilty plea states that he "acknowledged an understanding of the Peer-to-Peer file sharing system" and that "he knew that he was distributing child pornography to others because while he was in the process of downloading child pornography, others were able to download child pornography from his shared folder." Lawrence signed the plea agreement which contained that factual basis. He also signed an addendum to the plea agreement which stated that he had "read and carefully reviewed every part of this plea agreement with my attorney." The district

---

[14] *United States v. Scott*, 821 F.3d 562, 567 (5th Cir. 2016).

[15] Factual conclusions supporting sentencing enhancements are generally reviewed for clear error. *See United States v. Juarez*, 626 F.3d 246, 251 (5th Cir. 2010) ("A district court may draw reasonable inferences from the facts when determining whether an enhancement applies, and we review those inferences for clear error."). Other circuit courts that have considered this guideline enhancement have reviewed it for clear error. *E.g.*, *Cates*, 897 F.3d at 360 ("We review this finding, which resulted in a two-level enhancement, for clear error."); *United States v. Monetti*, 705 F. App'x 885, 868 (11th Cir. 2017) (same); *United States v. Dodd*, 598 F.3d 449, 452 (8th Cir. 2010) (same).

court was entitled to rely on Lawrence's admissions in that plea agreement when it imposed his sentence.[16]

Lawrence also stated at rearraignment that he had read the agreement and spent "five to six, six hours or more" reviewing it with his lawyer. The district court asked Lawrence whether "all of the facts stated" in the factual basis were true and whether he had done "everything described on those pages of the plea agreement." Lawrence answered affirmatively. Lawrence further stated at sentencing that he did not object to the factual statements in the PSR.

Additional information in the PSR supports the subject enhancement. The PSR states that Lawrence admitted that he had used the Ares peer-to-peer network to download child pornography for four to five years and that he had been collecting child pornography online for sixteen years before his arrest. Lawrence also stated that he would view and select the images and videos he liked and would save those files by moving them to a different folder on his computer.

Lawrence further stated in an interview with the FBI that he understood that other users could download his files:

> Q:   Alright Jody . . . do you ever go online and chat with anybody about this . . . talk about . . . with anybody about this?
>
> A:   No I don't
>
> Q:   You ever distribute anything to anybody?
>
> A:   No . . . never

---

[16] *United States v. Helton*, 203 F. App'x 682, 684 (5th Cir. 2006) ("As part of his plea, Helton specifically admitted possessing 13 weapons in connection with his drug possession. The district court thus did not clearly err in finding that Helton possessed firearms . . . ."); *United States v. Shabazz*, 530 F. App'x 458, 464 (6th Cir. 2013) ("[T]he district court was entitled to rely on [the defendant's] admission [in a plea agreement] for purposes of [imposing the defendant's sentence]"); *see also Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").

Q:    Ever send anybody any images?

A:    No, no

Q:    Can you . . . do you understand how the peer to peer programs work exactly?

A:    *Well, yeah . . . I guess they have access to my videos - whatever I've downloaded.*

Q:    So you understand the stuff that you downloaded, you're sharing with other people?

A:    *Right . . . So I'm basically distributing child pornography.*

Q:    Correct . . . that's how we obtained these from you. These were videos you were sharing . . . .

A:    Okay

Q:     . . . and by us getting them you were sharing with others.

A:    Right.

Q:    Does that make sense?

A:    Yes, sir.[17]

Lawrence contends that his tone, tenor, expressions, and statements, when considered in context, establish that he did not knowingly distribute child pornography. Even though Lawrence denied sending child pornography to other people, he acknowledged that he knew other users could access the videos he had downloaded. A reasonable construction of that statement is that Lawrence was fully aware that other users could download his files.

Finally, an FBI agent downloaded three videos from Lawrence's computer using the Ares network. In his reply brief and at oral argument, Lawrence's counsel contended that it was unclear whether the "single-source" tool the FBI agent used to download Lawrence's files actually downloaded

---

[17] The videotaped interview is not in the record, but the government acknowledges that Lawrence's counsel's reproduction in the record is accurate.

those files using the Ares network. Counsel for Lawrence argues that this casts doubt on the statement in the factual basis that Lawrence actually distributed three videos using the Ares network. But the factual basis and the PSR state that the FBI agent used a "law enforcement tool that allows single-source downloads *from the Ares P2P network*" to access the shared files on Lawrence's computer. A reasonable construction of that statement is that, regardless of the how the "single-source download" tool worked, the FBI agent accessed Lawrence's shared files through the Ares network. Counsel for the government explained at oral argument that "the single-source download tool is the tool used by FBI agents to make sure that when they are downloading pornography from a specific file it is from that defendant's file and not another defendant's file."[18] Although the record on this point lacks as much detail as counsel's explanation, that explanation is consistent with the record and is supported by cases that considered similar government software programs.[19] That explanation also makes sense in the context of peer-to-peer networks, which ordinarily allow users to download a single file from several different source computers.[20]

To summarize, (1) Lawrence admitted in the factual basis for his plea that he "knew that he was distributing child pornography to others because

---

[18] Oral Argument Tr. at 22:09–22:35.

[19] *See United States v. Blouin*, 2017 WL 3485736, at \*1–4 (W.D. Wash. Aug. 15, 2017) (explaining how different types of government child-pornography-detection software work and noting that "[the government software program] downloads files from a single source to ensure that they come from one particular peer-to-peer network user").

[20] *E.g., In re BitTorrent Adult Film Copyright Infringement Cases*, 296 F.R.D. 80, 83 (E.D.N.Y. 2012) ("BitTorrent works by breaking files into many smaller files 'to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).'").

while he was in the process of downloading child pornography, others were able to download child pornography from his shared folder"; (2) he told the district court that he had committed the acts described in the factual basis, and he did not object to the factual statements in the PSR; (3) he stated in an interview with the FBI, "I guess they [other users] have access to my videos - whatever I've downloaded"; (4) an FBI agent downloaded three child pornography videos from Lawrence's computer that were shared on the Ares peer-to-peer network; and (5) Lawrence admitted that he had used the Ares network for four to five years and had collected child pornography online for sixteen years before his arrest. We hold that together these facts are enough to sustain the district court's finding that Lawrence knew his use of the Ares network allowed others online to access his child pornography files.

## IV. CONCLUSION

We AFFIRM Lawrence's sentence.